*In re* ROBERT A. EATON.

Opinion filed February 5th, 1895.

**Disbarment of Attorney—Grounds For.**

> Where the statute enumerates grounds for the disbarment of an attorney, no other grounds can be considered by the court.

**Evidence Insufficient to Sustain Findings.**

> Evidence in this case considered, and *held* insufficient to warrant the finding of any fact that is ground for disbarment under the statute in force in this state.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Robert A. Eaton, an attorney at law, having been disbarred by proceedings for that purpose, appeals.

Reversed.

*Cochrane & Feetham* and *N. C. Young*, for appellant.

*R. M. Carothers* and *J. B. Wineman*, for the proceedings.

BARTHOLOMEW, J. This was a proceeding for the disbarment of a duly licensed attorney at law residing and practicing his profession at Grand Forks, in the First District. Four specific charges were made against defendant in the District Court of Grand Forks County. It appears that defendant, as attorney for the receivers of the National Cordage Company (hereafter we will not mention the receivers,) brought an action aided by attachment against Mast, Buford & Burwell Company, a Minnesota corporation, to recover a large sum of money. The papers and correspondence in the case are signed "Eaton & Higbee," but Mr. Higbee, as we understand, resided in another district, and had no personal relation whatever to the case, and we shall not connect him with it further. The defendant in the action, by Messrs. Bangs & Fisk its attorneys, served notice of a motion to discharge the attachment. Hon. C. F. Templeton, Judge of the First District, issued the order for hearing on the motion, but he was subsequently taken sick, and the motion was heard at the

office of Bangs & Fisk, in Grand Forks, before Hon. D. E. Morgan, Judge of the Second District, acting for Judge Templeton. All the charges are connected with the hearing of this motion, and, briefly stated, are as follows: 1. That on January 13, 1894, at Grand Forks, etc., the defendant, Robert A. Eaton, committed falsehood in the court, and before a judge thereof, by stating that he did not know the whereabouts of a certain affidavit pertaining to the motion then on hearing, which statement he well knew to be false; (2) that at the same time and place the defendant was guilty of practicing deceit upon the court, and falsifying evidence to be produced before the court, by seeking to establish his standing in court by an affidavit of service made by one Squires, of St. Paul, Minn., which affidavit stated, among other things, that the complaint in the action of the *Cordage Company* v. *Mast, Buford & Burwell Company* had been served upon the defendant in said action, when in fact said complaint had not been served, and said Eaton well knew it had not been served; (3) that the defendant was further guilty of deceit upon the court in that at the said date, and at Grand Forks, the defendant took from the files of the office of the clerk of the court an affidavit of service in the case before mentioned, which affidavit had been regularly filed with the said clerk, and substituted another and different affidavit, some of the allegations of which he well knew to be untrue, particularly the allegation concerning the service of the complaint as mentioned in the preceding charge; (4) that said Eaton is guilty of willfully destroying, defacing, altering, falsifying, and fraudulently removing and secreting a paper filed and deposited in a public office, to-wit, the affidavit of service which was removed from the files of the clerk of the court, as stated in the third charge. These charges, when presented to the court, were based exclusively upon the joint affidavit of Mr. Bangs and Mr. Fisk, and an affidavit of George C. Squires and L. K. Hassell, the clerk of the court. Mr. Squires is an attorney, who originally held the claim against Mast, Buford & Burwell Company, and who placed it in

the hands of a collection agency, by whom it was sent to Mr. Eaton, at Grand Forks. When these charges were presented, the court, as we understand the record, ordered their prosecution in due form.

The proceeding is special, but highly criminal in its nature. Section 473, Comp. Laws, reads as follows: "The following are sufficient causes for revocation or suspension: 1. When he has been convicted of a felony, or of a misdemeanor involving moral turpitude, in either of which cases the record of conviction is conclusive evidence. 2. When he is guilty of a willful disobedience or violation of the order of the court, requiring him to do or forbear an act connected with, or in the course of, his profession. 3. For a willful violation of any of the duties of an attorney or counselor as hereinbefore prescribed. 4. For doing any other act to which such a consequence is by law attached, or upon conviction for any of the offenses mentioned in sections 6400, 6403, 6410 and 6411 of the Penal Code." An examination of the charges in this case discovers that they can come only under subdivision 3 of that sction. Under subdivision 3 of section 465, a portion of the duties of an attorney are declared to be "to employ for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statement of law or fact." The statutory proceedings for disbarment or suspension will be found in the section following (section 473.) The trial is by the court. The answer is "guilty" or "not guilty." An acquittal in the trial court is final, but upon conviction in the lower court the defendant may appeal to the Supreme Court. In the trial court all the evidence must be reduced to writing, and filed and preserved; and in case of an appeal it all goes to the Supreme Court, to be "there considered and finally acted upon." We think the reasons which induced the legislature to make this proceeding an exception to the general rule, and require the Supreme Court to pass upon the facts, are readily discovered. Disbarment proceedings always attract local interest, and arouse

local feelings and prejudices. The sacred character of the trust confided to an attorney, as well as the nature of the oath that he takes, fully justify the average judgment of mankind in demanding and expecting of him an exceptionally high standard of personal and professional integrity. A suspicion, much more a sworn allegation, of professional misconduct on the part of an attorney, at once makes him an object of dislike, reprobation, and contempt in the community in which he lives. The public pulse is extremely sensitive on that point, and we would not have it otherwise. The legislature doubtless concluded that cases might arise when the ends of justice would require that the facts be reviewed by a tribunal where local prejudices, all the more dangerous when unperceived and unrecognized, could by no possibility affect the result.

While the result of a conviction is cases of this nature, in so far as the defendant is concerned, is purely punitory, yet the purpose of the proceeding is the protection of the court and the high character of the bar. Hence we should not invoke the strict rules of evidence in criminal cases, that require all material facts to be established beyond reasonable doubt. Further, learned counsel for the prosecution having raised the question in this court that, in so far as the statute authorized a hearing *de novo* in this court, it is inconsistent with the appellate character of this court as fixed by the subsequently adopted constitution, and hence no longer in force, we shall, without deciding the point raised, treat this case as an ordinary appeal in a case tried by the court when there are exceptions to the findings of fact, which counsel admits we can properly do on the record as it stands. Thus taking the case, counsel invokes, in support of the judgment below, the rule so often discussed, that requires us to affirm in cases when the findings are supported by any legal evidence. The rule established by this court is, perhaps, somewhat broader than the general rule. Under our statutes we have declared it to be our duty to reverse a finding, based upon written evidence, when it reasonably appears that the finding is against the weight of

the evidence; and when the finding is based upon parole evidence we will reverse the same when, after supplementing the evidence, with all the inferences and impressions that may legitimately be drawn from personal observation of the witness, it yet appears that the finding is clearly against the preponderance of the evidence. The fact that there may be some evidence to support the finding, is not conclusive in this jurisdiction. *Jasper* v. *Hazen*, 4 N. D. 1, 58 N. W. 454. And we certainly think these rules should apply in a case when a judgment adverse to defendant deprives him of the right to exercise his profession, which is to him a personal and property right (*In re Houghton*, [Cal.] 8 Pac. 57,) and demolishes a reputation and standing that has been earned by years of application and probity.

There was in this case a finding of fact upon each charge, the findings being identical in effect, and largely identical in language, with the charge. Each finding was excepted to as not being warranted by the evidence. It is to the credit of the defendant that counsel for the prosecution frankly admits in oral argument that the personal character of defendant, is so far as counsel knows, above reproach; thus fortifying the legal presumption of good moral character with which the law clothes every man, with a solemn admission. The defendant in his capacity as a witness, stands before the court as one entitled to credence, and whose testimony may not be disregarded, unless contradicted by some other witness or witnesses, or by some admitted or established fact in the case. We have carefully considered the evidence, and reach the conclusion that there is no contradiction in it. Excluding the instances where witnesses swear to legal conclusions, instead of probative facts, and where their testimony is hearsay merely, there is nothing in the testimony of either party that is inconsistent with the testimony of the other. Our task, then, is simply to discover what facts are established by the testimony that was given. What the case was called for hearing, the witnesses for the prosecution not being present, defendant stipulated that the witnesses, if present, would

swear as in their affidavits attached to the charges as presented to the court, that such affidavits might be read in evidence. It thus happens that nearly all the evidence for the prosecution is in the form of affidavits. The first finding of fact relates to the admission of defendant to the bar, and its correctness is not questioned. ·The second responds to the first charge, and is as follows: "That on the 13th day of January, A. D. 1894, in the City of Grand Forks, County of Grand Forks, and State of North Dakota, the said Robert A. Eaton did commit a falsehood in this court, and before a judge thereof, by stating that he did not know the whereabouts of a certain affidavit, in the matter then and there being heard by this court; which statement he then knew to be false and untrue." Is it warranted by the evidence? As much of the same evidence bears upon all the charges, it will be convenient to summarize it briefly as a whole. Mr. Bangs and Mr. Fisk, in their joint affidavit, state their residence and their business, and their acquaintance with the defendant. State their employment by Mast, Buford & Burwell Company in the action already mentioned, and that one Hurd was secretary of said company. They state the issuance of the warrant of attachment in said action, and the levy thereof upon certain property of Mast, Buford & Burwell Company. Mr. Bangs states, on information obtained through conversation with Mr. Squires, the St. Paul attorney, that certain papers, to-wit, the summons, sheriff's return thereon, affidavit and order for publication of summons, warrant of attachment, and sheriff's return on said warrant, were sent to him by Mr. Eaton for service, and served by him upon Mr. Hurd, the secretary, and that Mr. Squires made an affidavit of service accordingly. Affiants further show that subsequently they caused to be served upon Mr. Eaton an affidavit and application and order to show cause why said attachment should not be dissolved, and the action dismissed. They then set forth the hearing of said motion before Judge Morgan, as hereinbefore stated, on January 13, 1894, and allege that upon the said date they had secured the original files in the case from the clerk of

the court, for the purpose of investigating the same; that prior to January 13, 1894, Eaton had obtained the files from their office, saying he wished to copy the affidavit of Mr. Squires, and would return the files to affiants; that he did not return them, and at said hearing before said judge Mr. Bangs asked Mr. Eaton for said files, and Mr. Eaton thereupon handed him certain papers, remarking, "Here they are;" that upon examination of the papers Mr. Bangs discovered that the original affidavit of service was gone, and another affidavit of Mr. Squires substituted therefor, and that said substituted affidavit stated that the complaint had been served upon Mr. Hurd; that, upon making the discovery, Mr. Bangs demanded of Eaton to know where the original affidavit was, and that Mr. Eaton remarked that it was all right, that he had just substituted another affidavit, whereupon Mr. Bangs declared that he desired the original affidavit, as that was the one upon which the motion was based. Mr. Eaton then stated to the court that the substituted affidavit was practically the same; that he had made the substitution by an understanding with the clerk; and that his object in so doing was to show that Mr. Squires knew Mr. Hurd to be the secretary of Mast, Buford & Burwell Company, and for no other reason. Mr. Bangs then called attention to the fact that the original affidavit contained no allegation of the service of the complaint. Mr. Eaton asked if he was sure of that, and both affiants stated that they were, because upon that fact was based one of their principal grounds for dissolution of the attachment. Mr. Eaton then asked if they were sure that no complaint had been served, and, upon being informed that affiants had received from Mr. Hurd all papers served upon him, and that there was no complaint contained among them, and upon motion that the court order the production of the original affidavit, said Eaton offered to allow the word "complaint" to be stricken out of the substituted affidavit. This offer was rejected, and the production of the original affidavit insisted upon. Bangs asked Eaton where the original affidavit was, and Eaton replied that he did not know and stated that the

substitution had been made a half hour previous; and upon being told that in that case he ought to know where the original was, he replied that he thought he left it on the clerk's table. The clerk was then called by telephone, and he stated that Mr. Eaton had placed the original in his pocket, and taken it away with him. The judge then stated to Mr. Eaton that he must have it in his pockets, whereupon Mr. Eaton made search, and failed to find it. Said Eaton again said to Mr. Bangs, in answer to a statement made by him that he (Eaton) did not know where the affidavit was, that he did not see the use of making so much fuss about it, as affiants (the attorneys) were not entitled to it, but that he had an abstract of it, which he would allow them to use. Affiants refused the abstract, and again applied to the judge to compel the production of the original. The judge then stated to Mr. Eaton: "You must have put the affidavit with some papers in your office. You had better go and see if you can find it." Eaton then left the office of Bangs & Fisk, and, after an absence, returned, and told the judge that the affidavit could not be produced. The judge then asked him, "Do you know where you put it?" He replied, "Yes." The judge asked, "Where?" and Eaton replied, "In the waste basket," and, being asked if he tore or destroyed the affidavit, he replied that he did. Thereupon the court directed the production of the pieces, and Mr. Eaton brought them in, and pasted them upon another piece of paper, and a copy is attached to the affidavit. There is nothing further in the affidavit of importance, except certain legal conclusions, which, of course, establish no fact.

The affidavit of Mr. Squires shows his connection with the case of *Cordage Company* v. *Mast, Buford & Burwell Company* and how it came to the hands of Mr. Eaton, and states that on October 7, 1893, he received a letter from Mr. Eaton, inclosing certain papers in the case, which he served upon Mr. Hurd, and returned the original, with affidavit of service, to Mr. Eaton. (A copy of the letter and affidavit are attached.) On December 31, 1893, affiant received another letter, inclosing another affidavit of service. He

examined the affidavit, and found it fuller than first one, but did not compare, to see if papers enumerated were the same. He verified the affidavit, and returned it. It was not until in February following that he learned that the last mentioned affidavit stated that the complaint had been served, as well as the papers mentioned in the first affidavit of service, or that any point had been made by reason of failure to serve said complaint. Affiant further states that he wished to explain the matter to the District Court of Grand Forks County, but was assured by Mr. Bangs that it was not necessary.

The first letter, inclosing papers for service was as follows:

"Office of Eaton & Higbee, Attorneys, Grand Forks, North Dakota, October 6th, 1893. Mr. George C. Squires, St. Paul, Minn.,—Dear Sir: We inclose you herewith original summons, sheriff's return thereto, in the case of the *Cordage Co.* v. *Mast, Buford & Burwell Co.* Please see that personal service is gotten upon the defendant to-morrow, the 7th inst, without fail. Have proper return made of the proceedings, and return to us by first mail. We inclose copy for service and your files. Yours, truly, Eaton & Higbee."

The first affidavit of service was as follows:

"State of Minnesota, County of Ramsey—ss.: George C. Squires, of St. Paul, in said county, being duly sworn, says: That he served the attached papers in the case of G. Weaver Loper and Edward F. C. Young, receivers of the property of the National Cordage Company, a corporation organized under the laws of the State of New Jersey, plaintiffs, against Mast, Buford & Burwell Company, a corporation organized and existing under and by virtue of the laws of the State of Minnesota, defendant, now pending in the District Court for the County of Grand Forks, viz. the summons, sheriff's return thereon, affidavit and order for publication of summons, warrant of attachment, and sheriff's return on said warrant, upon the said defendant, Mast, Buford & Burwell Company, at said St. Paul, on the 7th day of October, 1893, by then and there handing to and leaving with J.

D. Hurd, the secretary of said defendant, true and correct copies of said papers, and each of them. Affiant further says that at the same time and place he also served upon said defendant a copy of the affidavit of R. A. Eaton for the writ of attachment in said action, and a copy of the undertaking on said attachment, by then and there handing said last mentioned copies to said Hurd, and leaving same with him. George C. Squires."

"Subscribed and sworn to before me this 7th day of October, A. D. 1893. Fitzhugh Burns, Notary Public, Ramsey County, Minnesota. [Notarial Seal."]

From the letter of December 30, 1893, inclosing the second affidavit of service, we quote: "Dear Sir: We inclose you herewith a blank form of affidavit in the Cordage case against Mast, Buford & Burwell Company, which we would thank you to execute and return to us. The defendant by its attorneys, Bangs & Fisk, appeared specially, objected to the jurisdiction of the court, and moved to set aside the attachment. In thus 'moving' they of course submit themselves to the jurisdiction of the court, and waive all objections that they make, except the following: (1) That the affidavit of attachment does not state facts sufficient to constitute a cause of action, and (2) that the surety on the undertaking is a practicing attorney. They also allege that no service of summons has ever been made upon the defendant, upon any of its officers, managing agents, or other persons upon whom service may be made as provided by law. As your affidavit is not explicit in some particulars, we have concluded to ask for the one submitted, to have on hand in case it is needed." The letter then proceeds to discuss the points raised by the motion, and, among others, the point as to the insufficiency of an attorney as surety, on an attachment bond. (Mr. Eaton was the surety in that case.) On this point the letter cites *Towle* v. *Bradley*, (S. D.) 50 N. W. 1057, "which is a pat case against us, and we have no doubt the attachment will fail if this case is presented."

The affidavit of Mr. Hassell, the clerk of the court, set forth that Mr. Eaton came to him at his house about noon of said

January 13th, and requested affiant to go with him to affiant's office. On reaching there, Eaton had the files in the Cordage Company Case, and said he wished to substitute another affidavit of service. The clerk told him that would be irregular, and that he would not be responsible for the consequences. Eaton said he would be responsible, and removed the old affidavit, and attached another one, which was marked filed on that date, and entered upon the register of actions. Mr. Hassell was also sworn at the hearing, but added but little to his affidavit, and stated that he did not know whether the original affidavit of service was marked "Filed" or not, but it was attached to the package of papers which was filed.

With an admission that Mr. Eaton was a member of the bar, the evidence for the prosecution closed. We have given it quite fully. The evidence for the defense can be stated more briefly. One W. L. Miller, an attorney, was employed in Mr. Eaton's office during the time of the transactions involved in this case. He was present in the office of Bangs & Fisk when the motion to discharge the attachment was heard. He testified by affidavit, and his testimony covers many points not brought out in the affidavit of Mr. Bangs and Mr. Fisk. Mr. Eaton, and Mr. Dresden, his stenographer, were also sworn for the defense. From the testimony of these witnesses the following undisputed facts appear: The time for answering in the Cordage Company Case had expired, and the papers were prepared for judgment for want of an appearance and answer, but, when presented to Judge Templeton, he refused to sign the order for judgment, stating that he had just signed the order to show cause why the attachment should not be discharged, and the case dismissed; and that he understood that the claim would be made that the complaint had not been served. While Mr. Eaton was absent from the office on this business, the order to show cause was left with Mr. Miller, who refused to accept service. When Mr. Eaton returned, they went through the objections, and failed to find nonservice of the complaint alleged as one of them; and Eaton remarked that

it must be a mistake, as he was sure the complaint had been sent to Squires, but that it made no difference, as they had not raised the point. Subsequently Mr. Eaton desired more time before the hearing of the motion to discharge the attachment, and asked it as a favor of Bangs & Fisk, but was refused, whereupon he served notice of an application to the judge, based on affidavit, for more time for the hearing. This affidavit, it seems, contained some aspersions upon the courtesy of Bangs & Fisk, and at the hearing of the application some sharp language passed between Mr. Bangs and Mr. Eaton. Mr. Eaton had been admitted to practice in 1891, and had but little experience on questions of practice. Mr. Miller had still less, having been admitted in 1893. Mr. Eaton was counseling with Mr. Cochrane, an experienced attorney, in the Cordage Company Case. Mr. Cochrane pronounced the affidavit of service made by Mr. Squires insufficient, for the reason that it did not show that Mr. Squires knew Mr. Hurd, upon whom the papers were served, to be the secretary of the defendant corporation. It was for that reason principally that a new affidavit was required. All the persons connected with Mr. Eaton's office believed at this time that a copy of the complaint had been sent to Mr. Squires, and that its ommission in the return was an oversight. The original affidavit of service was attached to the files by Mr. Miller without any instructions from Mr. Eaton. Just how the files were returned to the clerk's office is not clear, as all the persons employed in Mr. Eaton's office disclaim returning them. Mr. Eaton swears that he knew nothing about the affidavit of service being attached until he went to make up the papers for judgment, that he never ordered it filed, it was not marked "Filed," and he did not consider it filed. As to what transpired at the hearing before Judge Morgan, there is but little difference between the witnesses, except the witnesses for the defense give Mr. Eaton's explanation of the substitution of affidavits more in full, and state more of the conversation that passed between the attorneys, showing some warmth of feeling. They also state that the judge, when directing Mr. Eaton to pro-

duce the pieces of the affidavit that had been torn up, stated that he had no doubt of Mr. Eaton's good faith. The defendant also introduced the application to the court for the order discharging the attachment in the Cordage Company Case, and dismissing the case. There are five grounds stated in the application. The first is an attack upon the affidavit upon which the warrant of attachment was based. The second is an attack upon the attachment bond, because signed by Mr. Eaton, an attorney, as surety. The third is an attack upon the affidavit for the order of publication, and the fourth is upon the order itself. The last asserts: "That no service of the summons in the above entitled action has ever been made on the defendant corporation, or on the president or other officer, managing agent, or other person on whom the service of summons may, under the provisions of the laws of this state, be made, either personally or by publication," and that no appearance has been made, except a special one, and no publication of summons commenced. The order of the court on the application directed the Cordage Company to show cause why the attachment should not be discharged, and the action dismissed, for the reason particularly set forth in said application." The defendant also introduced a letter written by Mr. Eaton to Mr. Squires on January 3, 1894, wherein, in speaking of the defect in the attachment bond, Mr. Eaton says, "We haven't a leg to stand on." But he takes the position that the appearance of Bangs & Fisk was a general appearance, and the case could be pressed to personal judgment, and this the evidence shows was the position taken by him on the hearing of the application to dismiss.

We have given the substance of all the evidence having any bearing on the issues, and we return now to the second finding, which declares the defendant guilty of committing falsehood in the court, and before a judge thereof, in stating that he did not know the whereabouts of the first affidavit of service made by Mr. Squires. The evidence shows that as soon as attention was called to the fact that the original affidavit was gone, and a new one substituted, Mr. Eaton at once explained when it was done,

A heated colloquy followed between Mr. Bangs and Mr. Eaton. Mr. Bangs insisted upon having the original, Mr. Eaton insisted that counsel was not entitled to it, and stated, in answer to an inquiry from Mr. Bangs, that he did not know where it was. We think he did not know where it was, although that is not certain from the evidence. If he did, his denial was inexcusible, from a moral standpoint. But that allegation was not made to the court, or in response to any inquiry by the court. It was directed to Mr. Bangs exclusively. When the court asked that the affidavit be produced, Mr. Eaton, after visiting his office, promptly informed the court that it had been torn up, and thrown in the waste basket. The evidence does not warrant the finding if the finding intends to convey the idea that the assertion of Mr. Eaton was made to the court, or for the purpose of in any manner misleading or deceiving the court; and, unless so made, it does not come within the statute. Mr. Eaton's statement was rash, inconsiderate, and improper, but in mitigation we must not close our eyes to the surroundings as disclosed by the evidence. The court in *Re Eldridge*, 82 N. Y. 167, thus speaks of an attorney: "His professional life is full of adversaries. Always in front of him there is an antagonist, sometimes angry and occasionally bitter and venomous." The facts shown by the evidence in this respect furnish no cause for disbarment or suspension under the statute.

The third finding is as follows: "That on the 11th day of January, A. D. 1894, in said City of Grand Forks, the said Robert A. Eaton did, with intent to deceive this court, and a judge thereof, offer to establish his standing in court in an action then pending in this court wherein G. Weaver Loper and Edward F. C. Young, receivers of the National Cordage Company, were plaintiffs, and Mast, Buford & Burwell Company, a corporation, was defendant, and for such purpose presented to the court as proof of service a certain affidavit by him prepared, and subscribed and sworn to by one George C. Squires, a part of the allegations of which affidavit the said Robert A. Eaton then knew to be false and untrue in this: that in said affidavit by the said Eaton

prepared it was alleged that the complaint in the said action was duly served upon the defendant, when as a matter of fact no such complaint was ever served by the said Eaton, or by any one in his behalf or at his instance." We notice first, it nowhere appears by any proper evidence that the complaint was not served. Mr. Bangs and Mr. Fisk so state on information and belief, but show their source of information to be the unsworn statements of third parties. This does not prove the fact. Mr. Squires swears he did serve it, and in a subsequent affidavit, made, as he swears, at the request of the prosecution in this case, he does not retract or modify his former sworn statement. Mr. Hurd, on whom the service was made, was easily accessible, but he does not testify by affidavit or otherwise. The fact of nonservice of the compaint, if it be a fact, was vital to this part of the case, and was so easily susceptible of proof that the absence of all proof is very suggestive. But, be that as it may, after a most careful consideration of the evidence, we are clear that Mr. Eaton had good reason to believe that the complaint had been served. The original files were sent to Mr. Squires. There is no claim that the complaint was not in the files. Mr. Eaton, Mr. Miller, and Mr. Dresden all testify that they thought the complaint was sent. An argument is sought to be made against Mr. Eaton's good faith in the matter because the complaint is not named in the letter of transmissal of October 6, 1893; but reference to the original affidavit of service shows that several papers were served that were not mentioned in the letter, thus conclusively showing that the letter did not name all the papers transmitted. Another argument is based upon the fact that in his letter transmitting the second affidavit to Mr. Squires no mention is made of the fact that the word "complaint" had been inserted. But that was not the only or most important change from the first affidavit. The letter said: "As your affidavit is not explicit in some particulars, we have concluded to ask for the one submitted, to have on hand in case it is needed." Thus the attention of Mr. Squires was directly called to the fact that the second affidavit differed from the first, and we have no

right to assume that Mr. Eaton expected it would be sworn to without the differences being noticed. The evidence does not warrant the third finding of fact.

The fourth finding is as follows: "That on or about the 13th day of January, A. D. 1894, in the city, county, and state aforesaid, the said Robert A. Eaton took from the files of the office of the clerk of this court a certain affidavit, which had been regularly filed and deposited with said clerk in the said case of G. Weaver Loper and Edward F. C. Young, receivers of the National Cordage Company, a corporation, for which he substituted another and different affidavit, one of the allegations of which said last named affidavit said Eaton then knew to be false and untrue; that in the said substituted affidavit it was stated that a copy of the complaint in said action had been upon a certain date served upon defendant, when in fact no such service had been made." What we have already said disposes of that portion of this finding which declares that Mr. Eaton knew that the allegation in the substituted affidavit as to service was untrue. Mr Eaton frankly admits that he substituted one affidavit of service for another. The change was made at the clerk's office, and the affidavit that was removed was attached to the papers in the case. It was not marked "Filed." The papers in the case were not at that time in the possession of the clerk. Mr. Eaton had them, and he obtained them from Bangs & Fisk. He had never authorized the affidavit to be attached or to be filed. If no proof of service had been filed, Mr. Eaton, of course, had a right to file the amended or second affidavit. If proof of service had been filed, the court would, on application, permit amended proof as of course; but such amended proof should not be filed, or the former proof withdrawn, without leave. In this case the original papers were fastened together, and marked "Filed" on the wrapper. Subsequently they were withdrawn from the files, and while so withdrawn the first affidavit of service was attached. If thereafter the papers were delivered to the clerk of the court

with intent to have the affidavit of service filed, then, legally, it would be filed, although not so marked; but, if not so delivered, it was not filed, and Mr. Eaton's act was proper. Whether the affidavit was technically on file is not material in this case. It was removed openly, and under such circumstances as precluded any possibility of deceiving anyone. The second affidavit was marked filed on that date, although Mr. Eaton knew the first had been in the hands of opposite counsel. When the change was suggested, he promptly avowed it, and gave the reasons therefor. The record shows that he deemed it of but little importance He thought the attachment must go down for another reason, and that the appearance had been such as to cure all defects in the service. If he made a mistake in thinking the first affidavit had not been filed, it was an innocent mistake, honestly made, and harmed no one. The judge declared at the time that he did not doubt Mr. Eaton's good faith. The mistake, if such it be, must be charged to youth and inexperience, and, standing by itself, does not come within the letter or the spirit of our disbarment statute.

The fifth finding is as follows: "That on the 13th day of January, A. D. 1894, in said city, county, and state, the said Robert A. Eaton, after taking from the files of the clerk of said court the affidavit first mentioned in the last preceding finding, did mutilate and destroy said affidavit, the same having been previously regularly filed and deposited in the office of the clerk of said court." The fact that Mr. Eaton destroyed the affidavit stands admitted. All the other statements in the finding have been sufficiently discussed. All that can be claimed from the record is that it shows that Mr. Eaton made a false statement to another attorney, but in the presence of the court, and that he innocently removed a paper from the files of the court, and destroyed the same. These acts are reprehensible, and deserving of censure, but they furnish no ground, under our statute for, disbarment or suspension.

In discussing the evidence we have treated it in all respects in

the manner most favorable to the prosecution, and this case must not be regarded as indicating the manner in which similar cases will be treated hereafter. The uniform current of authority requires the charges in cases of this character to be established by a clear and undoubted preponderance of testimony. Weeks, Attys. 175, 176, and cases cited in note; *People* v. *Harvey*, 41 Ill. 277; *In re O*———(Wis.) 42 N. W. 221. The judgment of the District Court is reversed, and that court directed to dismiss the disbarment proceedings.

Reversed.

CORLISS, J., did not sit on the case, or take part in its decision.

WALLIN, C. J. (concurring.) Inasmuch as the court sitting in this proceeding consisted of but two judges, I deem it proper to avow my personal views in express terms. I do not wish to amplify upon the views of my associate as embodied in the principal opinion in the case; but do desire to say that I fully concur in what is said in that opinion. The evidence in the record impresses me with the fact that the appellant, at most, has been guilty of only a degree of indiscretion and rashness which can be fully accounted for by his lack of professional experience in court practice. Aside from this one matter the excellence of the appellant's moral character was conceded upon the argument in this court by the able and reputable counsel who conducted the prosecution. In the disbarment case, even if the scale were doubtful, I should consider a previous good character as being a makeweight of capital importance. To an attorney the disastrous consequences of a disbarment from practice can hardly be exaggerated. A great jurist has said: "It would often entail poverty upon himself and destitution upon his family. Surely the tremendous power of inflicting such a punishment should never be permitted to be exercised unless absolutely necessary to protect the court and the public from one shown by the clearest legal proof to be unfit to be a member of an honorable profession." See dissent of Mr. Justice Field in *Ex parte* Wall, 107 U. S. 318, 2 Sup. Ct. 569.