IN THE MATTER OF THE APPLICATION FOR DISBAR-
MENT OF ROBERT A. EATON, A MEMBER OF THE BAR
OF THIS COURT, AND TO REVOKE HIS CERTIFICATE
ISSUED TO HIM BY THIS COURT.

(235 N. W. 587.)

Opinion filed March 3, 1931. Rehearing denied April 1, 1931.

*James A. Manly* and *H. G. Nilles,* for the prosecution.

*S. E. Ellsworth, U. L. Burdick,* and *Robert A. Eaton,* in pro. per., for respondent.

NUESSLE, J.   Heretofore complaint was made touching the professional conduct of Robert A. Eaton, the respondent, a member of the bar of this state.   Thereupon such proceedings were had pursuant to the statute, §§ 801, et seq., Comp. Laws 1913, that on November 14, 1927, formal charges against the respondent were filed by the state bar board.   The Honorable G. Grimson, one of the judges of the second judicial district, was appointed referee by this court to take the testimony in the proceeding and present his findings, conclusions and recommendations.   The charges were served on the respondent, who on April 16, 1928, made his answer thereto.   Thereafter hearings were had before the referee, testimony was taken, and on May 24, 1930, the referee filed the record, together with his findings, conclusions and recommendations and a memorandum opinion supporting the same. The matter was set down for argument on the question as to whether the report and recommendations should be accepted and adopted.   Argument was had before this court on November 10, 1930.

The charges presented by the bar board on which this proceeding is predicated are:

"1. That the said Robert A. Eaton has knowingly and willfully violated his duties as an attorney and counselor of this court, in that he has engaged in offensive personalities not required by the justice of the cause with which he has been charged.

"2. That the said Robert A. Eaton has knowingly and willfully violated his duty as such attorney and counselor, in that he has willfully and wrongfully advanced facts or alleged facts prejudicial to the honor and reputation of parties and witnesses not required by the justice of the cause with which he has been charged.

"3. That the said Robert A. Eaton has knowingly and willfully

violated his duty as such attorney and counselor, in that he has encouraged the commencement and continuance of actions and proceedings from motives of passion or interest."

These charges are supported by numerous specifications, particularizing the items on which the charges are based.

Section 799, Comp. Laws 1913, as amended (§ 799, Supp.) provides:

"The revocation of any attorney's admission to the bar is, and shall constitute, a forfeiture of his office as an attorney or counselor at law to practice in the courts of this state, but not until a copy of the charges against such attorney shall have been delivered to him by the clerk of the court in which the proceedings shall be had and an opportunity shall have been given him to be heard in his defense."

Section 800, Comp. Laws 1913, as amended (§ 800, Supp.) provides:

"The certificate of admission to the bar of an attorney and counselor at law may be revoked or suspended for either of the following causes:

.    .    .    .    .    .    .    .    .    .    .    .

3. For a wilful violation of any of the duties of an attorney or counsellor as hereinbefore prescribed.

.    .    .    .    .    .    .    .    .    .    .    ."

Section 794, Comp. Laws 1913, provides:
"It is the duty of an attorney and counselor:

.    .    .    .    .    .    .    .    .    .    .    .

5. To abstain from all offensive personalities and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged.

6. Not to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest.

.    .    .    .    .    .    .    .    .    .    .    ."

So the charges as presented by the bar board are predicated on alleged violations of subsections 5 and 6, § 794, supra.

The referee found that the first and second charges were sustained by the evidence. His findings and conclusions with respect thereto read as follows:

"That the conduct of the said Robert A. Eaton cannot be excused upon grounds of youth or inexperience; that the matters complained of

did not occur in the heat of trial but were carefully thought out and planned after mature deliberation by the said Robert A.. Eaton; that said Robert A. Eaton has proved himself unworthy as a member of the Bar of this court.

"That the said Robert A. Eaton has been guilty of a willful violation of his duty as an attorney and counselor in engaging in offensive personalities and in advancing facts prejudicial to the honor or reputation. of parties and witnesses and not required by the justice of the cause with which he was charged."

The referee's report is full and detailed. It consists of 49 typewritten pages. It analyzes carefully and at length the evidence offered on the issues presented by the charge and the answer. The record is voluminous. The transcript of the testimony taken comprises more than 600 pages. The exhibits are many in number and include letters, statements, documents, and books, as well as pleadings, affidavits, depositions, and transcripts in various cases that have been in litigation.

Shortly stated the facts are substantially as follows: The respondent, Robert A. Eaton, was admitted to the bar many years ago. Thereafter he removed from the state and was absent therefrom until some time in 1923. His brother and his nephews had long been engaged in the farm loan business at Fargo. They did an extensive business in the placing of loans in the southern portion of the state. They oper-. ated as a copartnership under the name of Eaton & Eaton and. owned a holding corporation known as the Eaton Loan Agency. Their principal connection in the loan business was the Union Central Life Insurance Company. They were the financial agents of this company in the territory wherein they carried on their loan business. In 1923 they made an arrangement with the respondent, whereby he was to enter their employ and look after their interests and the interests of the Union Central Life Insurance Company in Dickey and contiguous counties. The respondent entered into this employment and was engaged therein for some time. Friction developed between him and his employers. He complained about and criticized their method of carrying on the business and soon discontinued the connection. Almost immediately thereafter he opened an office for the practice of law at Edgeley, in LaMoure County. During the time he was employed by

Eaton & Eaton he had had occasion to cover the territory contiguous to Edgeley and interview and become acquainted with many of Eaton & Eaton's loan clients therein. During this period he had access to Eaton & Eaton's files, containing papers and information generally in connection with loans placed in his territory. When he opened his law office at Edgeley, he advertised that he had discontinued his connection with Eaton & Eaton and offered some public criticism of their methods of doing business. This advertising matter is open to the implication that he was inviting litigation against Eaton & Eaton and the insurance company. In the meantime agriculture had not been prospering in this community. Times were hard with the farmers. Loans were in default. Under the method followed by Eaton & Eaton when a loan was made, it was secured by a first mortgage on real estate running to the insurance company, and Eaton & Eaton took deferred commissions which were ordinarily secured by second mortgage on the same real estate. In some cases of default in payment the insurance company and Eaton & Eaton resorted to foreclosure to enforce collection. Usually these foreclosures were by advertisement. After Robert A. Eaton began the practice of law at Edgeley, some of the mortgage debtors whose mortgages were being thus foreclosed, employed him to enjoin the foreclosures and when actions were begun to defend such actions. In some cases the mortgage debtors employed the respondent without solicitation on his part. In other cases when foreclosures were begun and respondent became aware thereof he sought out the mortgagors and solicited them to employ him to enjoin the foreclosures and defend any actions that might be brought. He recounted to the mortgagors the advantages that might ensue by enjoining the foreclosures, in that thereby the mortgagees would be forced to foreclose by action and that if such actions were resisted there was a possibility that this might be successfully done; that though foreclosures were finally decreed, the mortgagors would, in any event, have the benefit of a longer occupancy of the mortgaged premises by reason of the ensuing delay. In any event, the respondent was employed to represent a considerable number of the mortgage debtors as attorney, either in taking steps to enjoin foreclosures or in defending when foreclosures were subsequently begun by action. Some of these cases were appealed. Cases in which appeals were thus taken are Olson v. Union Cent. L.

Ins. Co. 58 N. D. 176, 225 N. W. 124; Lindblom v. Union Cent. L. Ins. Co. 58 N. D. 231, 225 N. W. 653, and Fitzgerald v. Union Cent. L. Ins. Co. (C. C. A. 8th) 42 F. (2d) 76. The theory of the defenses in all of the cases was substantially the same. They all involved mortgages executed prior to the employment of the respondent by Eaton & Eaton, so the knowledge and information acquired by the respondent during that employment would be material and valuable in the defense of such actions. Some of the actions were strenuously contested and considerable bitterness was engendered between the respondent and Eaton & Eaton and the Union Central Life Insurance Company, as well as with the attorneys representing these parties. In any event, the respondent in some of the pleadings which he served and filed and in affidavits which were prepared by him and filed in proceedings ancillary to certain of the actions, made serious charges against Eaton & Eaton and the Union Central Life Insurance Company and their witnesses, and against others who he thought might be in some way conneted with the transactions. He also made similar charges against the attorneys who were engaged in the litigation as against him. We do not deem it necessary to set out in full the pleadings and affidavits containing the allegations thus referred to, or to detail the facts and circumstances of the cases in which the affidavits and pleadings were filed. It is sufficient to state briefly some of the charges made, as follows: In a complaint in one of the actions in question the respondent alleged:

"That during all of the time mentioned herein, said Eaton & Eaton had in their employ a loan solicitor named Foster Paige; that said Paige was paid an inadequate salary, claimed he was unable to live on it, and in consequence thereof was tacitly permitted or expressly authorized to make connections in LaMoure and Dickey counties in said state, whereby farmers were overreached for his benefit, and the Life Insurance Company and said general agents profited by extra high rates of interest and commission.

"That Aubrey Lawrence, a member of the Fargo, N. D. Bar, and senior member of the firm of attorneys now representing the Union Central Life Insurance Company and the Eaton Loan Agency in said section of said state, counseled said Paige, that he could safely resort to such dishonest business methods in the pursuit of gain; that follow-

ing the giving of such advice, his firm was made the regular attorneys of said defendants above named."

In an affidavit respondent charged, among other things:

"That affiant made no answer at all to their demand that he quit the farmers. Nor any answer to the express threat of an assault. Nor as to their scandalous charges, except as aforesaid. That as to the threat to destroy him professionally, affiant answered directly that maybe they could, that their attorneys had the machinery largely in their own hands. But that if an attempt was made to develop such a case against affiant that it would be shown that their own attorneys had brought about the present situation so far as the litigation is concerned, by their flagrant violations of the criminal law and the code of professional ethics. That affiant had in mind in that connection the criminal advice given by Aubrey Lawrence to the loan solicitor, Foster Paige, referred to in some of the cases, after which said Paige swindled scores of farmers, and in the course of which said Lawrence's firm became attorneys for the plaintiff and for the Eaton Loan Agency. Also to his flagrant violation of Section VIII of the code of professional ethics of the North Dakota Bar Association and canon 9 of the American Bar Association, followed by his apology to affiant for the latter, only to repeat the offense and ignore affiant's protest.

"That somewhat on the side of the entanglement is one Harry L. Weaver, a financial brigand of Edgeley, N. D. and a veritable Old Man of the Sea upon the back of that section. That his victims may be found all over the country, and among many non-resident owners and investors. . . ."

And in another affidavit:

"1. Almost immediately young John Eaton, who knew about as much about handling credits as I know about the Hindoo dialect, began giving drastic and revolting orders to me to clean up on old people who were helpless.

"2. Meantime, they have put us to such expense and weasel-like have sucked witness fees out of the defendants when they had no thought of appearing.

"3. And then J. B. Eaton made another one (affidavit), and Divet was sent out to read them and did it in a cowardly fashion which afforded me no opportunity to answer them.

"4. And Lawrence was afraid to come out and face the thing like a man and Divet was afraid to throw his mud so I could have a chance to answer, and defend myself. And yet they are 'honorable' men, and I, I am 'unprofessional.'

"5. And Mr. Holt echoes the mean slander in this case—and yet for pay would sell his services in an effort to fasten fraudulent debts on the backs of bankrupt farmers in North Dakota, that young nabobs of the purse proud aristocracy of Fargo may strut around in red caps and purple and fine linen and sleep in silk nightshirts. It is enough to make the angels weep."

In his answer to the charges filed by the bar board, the respondent in effect admits he did the acts and made the statements with respect to the parties, witnesses and attorneys, as set forth in the specifications supporting the charges, but pleads justification and seeks to palliate his acts and words on the ground that he was aggravated beyond reason and was forced to resort to such methods by the extremities of a just cause.

As shown by the findings and conclusions of the referee heretofore quoted, the referee concluded that the first and second charges were sustained by the evidence.

We have examined the record with great care and are satisfied that the referee's finding and conclusion with respect to the first and second charges are amply warranted and must be approved and adopted. The statements heretofore quoted speak for themselves. Certainly they transgress the spirit as well as the letter of the statute. These statements were contained in pleadings and affidavits filed and used in pending litigation. They are wholly irrelevant. They in no wise touched the issues raised in the litigation involved. Whatever the aggravation respondent may have been subjected to, it could not justify the use of such language, or a resort to such methods. The respondent quotes from Re Eldridge, 82 N. Y. 167, 37 Am. Rep. 558, wherein the court, speaking of an attorney, says: "His professional life is full of adversaries. Always in front of him there is an antagonist, sometimes angry and occasionally bitter and venomous," and thus seeks to justify himself in the instant case. The use of intemperate language in the heat of argument may sometimes be excused, though it cannot be justified. But here the nature and character of the instruments in

which the objectionable statements were made imply deliberate thought and purpose and negative any excuse of haste and sudden heat of passion. Besides this there are in the record numerous letters and statements of the respondent to various persons containing reiterations and amplifications of these objectionable statements, as well as other and more serious charges against parties, witnesses, attorneys, and others. In fact no one not in accord with his theories as to the facts or the law in the cases in which he was interested seems to have been immune. The respondent contends that the use of such language in letters and statements, not a part of or intended to be a part of court records, and not made or uttered in the presence of the court or in the course of any legal proceeding, does not transgress the statute. Conceding that this contention is sound, nevertheless such letters and statements are relevant because of the light they throw upon the animus of the respondent in making such charges in the pleadings and affidavits. For instance, the respondent addressed a letter to the firm of attorneys conducting the other side of one of the cases in which he was attorney, wherein he charged them with perjury, accused them of improper practices, and unprofessional methods meriting disbarment, and made various other charges against them. Not content with thus writing to counsel, he also sent a copy of this letter to their client.

Were there any doubt in our minds as to the culpability of the respondent or as to his unfitness to remain a member of the bar, that doubt would be wholly dissipated by his attitude throughout these proceedings, culminating in his final brief filed in this court. He has been wholly unrepentant and always defiant. He has in his written statements, his briefs and his argument, reiterated again and again the offensive charges and statements. He has intimated that lawyers are venal and the courts corrupt. In his final brief he in effect challenges this court to disbar him. He avers that he is representing the just cause of the poor and oppressed and though he is disbarred, as he expects to be, time and events will vindicate him. He charges that there is an unholy alliance between Catholics and Masons. That almost without exception the members of the bar are either Catholics or Masons. That this alliance is the creature and instrument of the privileged rich. That by means of it law is perverted and justice defeated. That through it, the courts, and through the courts the whole

government is controlled. That all of this is made manifest in the present proceeding. That the bar board which made and filed the charges against him, did so not because there was merit to the charges, but because they were required to do so. That counsel in this proceeding against him were selected and employed not to make a fair presentation of the facts, but rather to destroy him notwithstanding the facts. That the referee, one of the district judges of this state, did not exercise his fair judgment in the matter but was subject to influence and contrary to his inclination was influenced to hold against him. That the members of this court are subject to the same malign influence and because thereof the merits of his case will not be considered and justice will be denied him. That this mysterious and sinister power is exercised and effective not alone in the courts of this state but also in the federal courts. And he concludes more melodramatically than modestly "I will only say that while my head may be bloody it is unbowed, and I have kept the faith."

The third accusation against the respondent is predicated on a violation of subsection 6, § 794, Comp. Laws 1913, heretofore quoted. In his answer to this charge the defendant in effect admitted he had solicited employment as counsel in some of the cases referred to in the specifications. But he sought to justify his action in so doing. In that regard he alleges in his answer:

"That as to accusation three, complaining that respondent has encouraged the commencement and continuance of actions and proceedings out of passion or interest, in effect that respondent has solicited business, it is urged—That respondent had a legal right to do so. . . . That . . . the 'interest' contemplated by the statute does not mean compensation for services satisfactorily performed in litigation recognized by law.

"That as to 'passion,' respondent says that if there has been any passion on his part in the course of this litigation, it is not the passion contemplated by the statute, but rather an intense zeal for a reform. . . ."

With respect to this charge the referee found:

"That in the opinion of this court it has not been shown by sufficiently clear and satisfactory evidence that in soliciting and encour-

aging litigation made the basis of the third accusation, Robert A. Eaton acted from motives of passion or interest contemplated by statute as grounds for disbarment."

The prosecution challenges this finding. The charge here is that the respondent encouraged the commencement and continuance of actions from motives of passion and interest. We think that "passion" as thus used connotes malice, antipathy, hatred, or revenge, and that "interest" means something more than an impersonal desire to assert or vindicate a right. The referee thus construed the words passion and interest as used in the statute and in the charge. In his memorandum opinion he says:

"The burden is upon the Bar Board to show by clear, satisfactory evidence that the activities of Robert Eaton here were caused by motives of hatred, revenge or financial interest. This court is not satisfied that they have done so."

The referee had the advantage that comes from seeing and hearing witnesses, and particularly in this case, the respondent. Where, as here, motive and intent are vital, one hearing and seeing the witnesses is in a position of peculiar advantage in determining their existence and character. The referee found that the respondent, though he had commenced and continued the litigation in question, did not do so from motives of passion and interest within the meaning of those terms as used in the statute. In such a proceeding the findings of the referee are not to be disturbed unless they are clearly against the preponderance of the evidence. See Re Eaton, 4 N. D. 514, 62 N. W. 597. Measured in this way we are not inclined to overturn the findings as made.

The respondent also insists that the instant proceeding is brought under the statute and that therefore the inquiry must be confined to the grounds enumerated by the statute. In support of this contention he cites Re Eaton, supra. The referee apparently took this view. We think he was right in doing so. A disbarment proceeding is highly criminal in its nature. See Re Eaton, supra. Respondent had a right to be apprised of the specific charges made against him and he was entitled to have the ensuing investigation confined to the charges so made. The question here is not as to the power of the court in the

premises but as to the exercise of that power. As we said in Re Simpson, 9 N. D. 379, 83 N. W. 541:

"The power to discipline attorneys, who are officers of the court, is an inherent and incidental power in courts of record, and one which is essential to an orderly discharge of judicial functions. To deny its existence is equivalent to a declaration that the conduct of attorneys towards courts and clients is not subject to restraint. Such a view is without support in any respectable authority and cannot be tolerated. Any court having the right to admit attorneys to practice, and in this state that power is vested in this court, has the inherent right in the exercise of a sound judicial discretion, to exclude them from practice. The statutory provision found in § 432, Revised Codes (§ 799, Supp. Comp. Laws 1913) authorizing this court to suspend or disbar an attorney for unprofessional conduct is merely a legislative affirmance of a power which already existed. In support of the foregoing see: Ex parte Wall, 107 U. S. 265, 27 L. ed. 552, 2 S. Ct. 569; Re Mills, 1 Mich. 392; People ex rel. Cutter v. Ford, 54 Ill. 520; Ex parte Secombe, 19 How. 9, 15 L. ed. 565; Ex parte Garland, 4 Wall. 333, 18 L. ed. 366, and numerous cases cited in 6 Enc. Pl. & Pr. on pages 711 and 712."

But notwithstanding the existence of this inherent power in the court, where, as here, the charges are on account of violations of the duties as enumerated by the statute and not on account of breaches of duty beyond the statute, the court ought not to consider offenses of the latter sort. By this holding, however, we do not intend to approve of or condone the conduct of the respondent with respect to the litigation which is the basis of the third charge. Clearly this conduct was unprofessional and reprehensible. It constituted a violation of the canons of ethics of both the state and national bar associations and in a proper proceeding the respondent would be subject to discipline on account thereof. See People ex rel. Chicago Bar Asso. v. McCallum, 341 Ill. 578, 173 N. E. 827. The referee's conclusion as to the third charge favorable to the respondent should be affirmed.

In view, however, of our conclusion as to the first and second charges, the judgment of this court must be and is that the respondent's license to practice in the courts of this state be and the same is revoked and

cancelled, and the clerk of this court is directed to strike his name from the roll of attorneys.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL, and BURKE, JJ., concur.