Per Curiam.
 

 The record shows that defendant Sidney A. Brodson was graduated from the law school of the University of Wisconsin in June, 1931, and in that year was admitted to the Illinois bar. He practiced law in Chicago until 1934. Then he was admitted to the Wisconsin bar and came to Milwaukee. He was given office space by a Milwaukee lawyer and had no rent or other office expense to pay. His business consisted principally of making collections. His income was approximately $2,000 per year. Brodson found this was insufficient to support his family and in June of 1940, he abandoned the practice of law and has not re-engaged in it.
 

 In making small social bets Brodson discovered that he had the ability to anticipate the results of athletic contests and the approximate scores of the competing teams and, beginning in 1943, he made gambling his business. He was extremely successful in that and made his living from his gambling operations. In the late ’40s and early ’50s his bets were in the neighborhood of $1,000,000 per year.
 

 In 1951 Brodson appeared before the Kefauver committee of the United States senate and there in the course of his
 
 *126
 
 testimony relating to gambling he disclosed the extent of his operations and the income derived from them. He estimated that his income from gambling amounted to $50,000 to $80,000 per year. However, Brodson’s federal income-tax return declared income of slightly more than $33,000. In 1953 the United States indicted Brodson for the offense stated in the indictment as follows:
 

 “[Brodson] . . . did wilfully and knowingly attempt to defeat and evade a large part of the income tax due and owing by him and his wife ... by filing and causing to be filed ... a false and fraudulent joint income-tax return on behalf of himself and his said wife, wherein it was stated that their net income for the said calendar year [1950] was the sum of $33,074.62 and that the amount of tax due and owing thereon was the sum of $7,838.64; whereas, as he then and there well knew, their joint net income for the said calendar year was the sum of $137,846.83, upon which said net income was due and owing to the United States of America an income tax of $71,691.06; in violation of sec. 145 (b), Internal Revenue Code; sec. 145 (b), Title 26, United States Code of Laws.”
 

 The United States did not bring the action promptly to trial but in the meantime seized all of Brodson’s assets, whereby Brodson was greatly hampered in making any defense which he might otherwise have made. He was unable to retain counsel for lack of funds and the district court of the Eastern district of Wisconsin appointed two able and energetic counsel to serve without pay. However, money could not be obtained to defray necessary expenses of investigation and preparation for trial and in 1958, before the matter was brought to trial, Brodson entered a plea of guilty to the indictment set forth above, was adjudged guilty upon that plea, and he was sentenced to eighteen months in a United States correctional institution, in addition to a fine
 
 *127
 
 of $10,000. Defendant served eight months in the federal penitentiary and ten months on parole. Parole has now been completed.
 

 Although taking into consideration the fact that Brodson’s lack of funds impaired his ability to defend himself, the referee found that “there is no escape from the conclusion that the fraud admitted by the plea of guilty has not been rebutted or satisfactorily explained.” By defendant’s present motion to affirm the report he, of course, repeats his acknowledgment of guilt. Upon such finding the referee studied whether such fraud perpetrated by the defendant constituted moral turpitude and concluded that it did, as stated in the case of
 
 Jordan v. De George
 
 (1951), 341 U. S. 223, 232, 71 Sup. Ct. 703, 95 L. Ed. 886:
 

 “Whatever else the phrase ‘crime involving moral turpitude’ may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude.”
 

 We concur with that conclusion.
 

 The referee then gave attention to what discipline, if any, ought to be imposed upon the defendant for the offense so found. He took into consideration the fact that the fraud did not involve a relationship between attorney and client and that very heavy financial punishment and the results attendant on his prosecution have already beggared the defendant and left him saddled with overwhelming debts. All things considered, the referee disapproved the addition to them by imposition of fine or costs. He noted also that during the past eight years, while under indictment and later during imprisonment, the defendant has in effect been suspended from practice. Therefore Judge Drury recommended that no further suspension be ordered but a severe reprimand be administered.
 

 
 *128
 
 In defendant’s brief and oral argument he presents for the consideration of this court that he had been in no trouble because of any unethical practices during the period in which he was actively practicing and that from 1940 on he engaged in no law practice so that his gambling activities did not bring the reputation of the bar in general into disrepute. He prays the court to confirm the report of the referee and that the court refrain from any disciplinary measures other than to reprimand him for his past conduct. Thereby, defendant informs the court he may resume the practice of law and make at least a start on paying the numerous debts which he has incurred.
 

 This court accepts the referee’s finding of fact that guilt of fraud amounting to moral turpitude is well sustained by the evidence. We cannot concur in the referee’s recommendation that no further disciplinary measures except reprimand are appropriate or adequate under the circumstances. Though the fraud was not perpetrated within the relationship of attorney and client, we think the sound rule is that stated by Mr. Justice Owen in
 
 In re Stolen
 
 (1927), 193 Wis. 602, 613, 214 N. W. 379, 216 N. W. 127:
 

 “One’s morality or lack of morality is revealed by general conduct. One may lack morality in a great many ways. Where this lack of morality has no relation to, and does not affect, his duties and responsibilities as an attorney at law, the delinquencies are generally overlooked by the courts. But where there is lacking honesty, probity, integrity, and fidelity to trusts reposed in him, it matters not whether the lack of such virtues is revealed in transactions with clients, in the conduct of lawsuits, or any other business dealings or relations. These qualities are highly essential on the part of those who are to exercise the privileges and responsibilities of members of the bar. When the lack of them becomes apparent, no matter what the character of the deal or transaction that may furnish the evidence, it becomes the duty of the court to purge its roster of an unreliable member.”
 

 
 *129
 
 For many years Brodson made his living in what is at best a shady business. He appears to have been an ethical gambler but we hope and believe that the ethics of the legal profession require something higher than the ethics of a gambler. Brodson appears to concede this by his statement that during his gambling career he brought no discredit upon the bar because he then refrained from all law practice. However, during that time his business associates were gamblers and his own morality reached the point where he made false and fraudulent tax returns. We consider that there has been an insufficient demonstration of a rehabilitated character which will permit us to certify Brodson to the bar and to the public as one meeting the moral standards of the legal profession. Until May 2, 1960, Brodson was still on parole. Parole is merely an enlargement of prison limits. During that time he is still serving his sentence and is under surveillance. We should at least wait and see how, as a free agent in free society, Brodson behaves. His license to practice law should be revoked and suspended for at least the period of two years.
 

 We are further troubled by recognition of the fact that, since 1940, Brodson has not practiced law for twenty years. Before that date his practice was so meager that, even without office expense, he was unable to support his family. In the interval, statutory and case law have experienced great changes. In justice to the public, to the bar, and to Brodson himself, we should not restore to him the right to practice law unless we have reasonable assurance that he is competent to do so. We find no better assurance of that than his successful passage of the examination given by the Board of State Bar Commissioners to applicants for license to practice.
 

 Therefore,
 
 It is Ordered and Adjudged:
 
 That the license of the defendant be revoked and suspended forthwith for not less than two years from the date of the filing of this judg
 
 *130
 
 ment and thereafter until the same may be restored. At the end of that time defendant is granted the privilege of applying for reinstatement of his license to practice law but that he be reinstated only upon presentation of evidence that he has refrained in the meanwhile from practice and that within one calendar year preceding his application for reinstatement he shall successfully pass the examination required by the Board of State Bar Commissioners of candidates for license to practice law in this state. The said Bar Commissioners, complainants herein, are directed to accept him for examination at the time or times when the commissioners conduct their periodic examinations.
 

 No costs in this court are imposed in this proceeding.
 

 Hallows, J., took no part.