IN RE PETITION for REINSTATEMENT OF RASOR.

(D. D. No. 73-1—Decided October 23, 1974.)

Messrs. *Critchfield, Critchfield, Critchfield & Johnston,* Mr. *Henry Critchfield* and Mr. *Ronald E. Holtman,* for petitioner.

*Per Curiam.* Petitioner, Clayton Robert Rasor, resigned his right to practice law in this state* on April 19,

---

*We recognize that if petitioner had voluntarily surrendered his license to practice law after February 28, 1972, the Rules for the Government of the Bar which became effective on that date would provide no vehicle for petitioner's reinstatement. However, the rule in effect at the time of petitioner's resignation, Rule XVIII(7), Rules of Practice of this court, provided a distinction between the effect of disbarment and resignation, and recognized that a lawyer who had voluntarily surrendered his license to practice could at some later time be readmitted to the practice of law.

1965, in response to an imminent criminal prosecution for his embezzlement of client funds. Subsequently, petitioner entered a plea of guilty to the embezzlement, and the Court of Common Pleas suspended imposition of sentence and placed petitioner on probation for two years, conditioned upon petitioner continuing in a course of treatment with a licensed and qualified psychiatrist.

On October 25, 1973, petitioner filed a petition for reinstatement to the practice of law. A hearing on the petition was subsequently conducted by a panel of three members of the Board of Commissioners on Grievances and Discipline pursuant to the provisions of Gov. R. V(10). The panel submitted its findings of fact and recommendation to the board, and the board recommended that petitioner's application for reinstatement be denied.

Gov. R. V(24), in pertinent part, provides:

"No person shall be reinstated unless he has established by clear and convincing evidence that he possesses all of the qualifications, mental, educational and moral, which would have been a requirement of an applicant for admission to the Bar of Ohio at the time of his original admission, and that he is now a proper person to be readmitted to the Bar of Ohio, notwithstanding the previous disciplinary action taken against the petitioner. In such case the order of reinstatement may be conditioned upon the petitioner's subsequently taking and passing a regular bar examination of this Court and thereafter taking the prescribed oath of office."

The record discloses the following course of events which led up to petitioner's criminal involvement and resignation. In 1954, his wife and then his son were stricken by polio. Thereafter, his wife was hospitalized and bedridden over a substantial period of time, causing petitioner to devote a great deal of time to caring for the family. In 1962, he consulted a psychiatrist for emotional problems, and continued in therapy through 1967. Matters did not improve and petitioner lost his home. His wife left Ohio to live with her father in Florida, where she continues to re-

side. After resigning his right to practice law, petitioner's employment included unloading lumber and selling encyclopedias. Finally, in 1966 he obtained employment with the Gerstenslager Company, where he has worked since.

Prior to his conviction, petitioner made complete restitution with his clients. Thereafter, during the next two years he was under the supervision of the Medina County probation department, during which time he consulted with Dr. William H. Holloway and the Tri-County Mental Health Association. He completely satisfied all requirements of his probation, which included consultations regarding his mental health. He has not consulted with Dr. Holloway or any other psychiatrist since 1967.

Since 1966, petitioner has made substantial gains in recovering his personal reputation and in rehabilitating himself. At the Gerstenslager Company, he has risen to the level of personnel manager and has ably assisted the company in over 50 labor negotiation meetings. While petitioner's personal life is limited socially to playing duplicate bridge, he has nevertheless earned the admiration of his friends and business associates for his perseverance in this rehabilitation.

Petitioner seeks reinstatement for the purpose of serving his employer as in-house counsel, and as indicated by Richard Fishburn, Vice President and General Manager of the Gerstenslager Company, the position of house counsel will be available to him upon his reinstatement.

There has been no opposition to reinstatement from the Medina County Bar Association, which originally accepted petitioner's resignation. In addition, the former Medina County prosecutor in petitioner's case, Attorney Richard D. Dickey, and the Medina County probation office have all recommended petitioner's reinstatement.

Further, in the findings of fact filed as part of its report, the Board of Commissioners stated:

"The panel found that the petitioner, from the testimony, had rehabilitated himself emotionally and apparently needs no further psychiatric help; there was no testi-

mony that he had violated any provisions of his probation; there was no evidence indicating that he had not made restitution of the funds he embezzled.''

However, the board found that petitioner has ''not met all the requirements of Section (24) of Gov. R. V and therefore is not rehabilitated,'' because ''his primary purpose of asking for reinstatement is for his employer's benefit,'' that petitioner ''has no great personal desire to be reinstated,'' and that petitioner admitted that ''he had not kept current on Ohio case law and statutes except cases reported in the newspaper.''

Our review of the record does not bear out a finding that petitioner is disinterested in the outcome of this reinstatement proceeding, and we therefore must reject that premise as a basis for finding petitioner not rehabilitated. Also, we note petitioner's willingness to pass an Ohio bar examination as a condition precedent to readmission, as provided by Gov. R. V(24), *supra.*

Therefore, it is ordered that petitioner, Clayton Rob ert Rasor, be admitted to the practice of law, conditioned upon his taking and passing a regular bar examination of this court and thereafter taking the prescribed oath of office.

*Judgment accordingly.*

HERBERT, CORRIGAN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., and STERN, J., dissent.

STERN, J., dissenting. I cannot concur in the majority's decision to conditionally reinstate respondent to the practice of law.

There is nothing in the record to indicate that respondent is possessed of all the qualifications, mental, educational and moral, required of an applicant for admission to the Bar of Ohio at the time of his original admission.

In respondent's testimony before the hearing panel

of the Board of Commissioners on Grievances and Discipline he testified, as follows:

"Mr. Smith [hearing panelist] : Tell me what you have done, if anything, in terms of keeping up with statutes and case law and so forth, if any?

"The witness [respondent] : Very little other than what I might read in the newspapers or on some of the Supreme Court decisions in the popular magazines.

"In the course of my work, of course, I run into some of the federal statutes and equal employment opportunity and wage and hour. No general."

I agree with the majority that since respondent's resignation from the practice of law there is nothing in the record to show that respondent has conducted himself other than as a good citizen. That fact alone, however, is not sufficient to warrant readmission. To be readmitted to the practice of law, without any proof that respondent has the requirements of an applicant for admission to the Bar of Ohio at the time of his original admission, does not comply with Gov. R. V(25) of this court, governing the procedure on a petition for reinstatement.

The majority holds that the record does not support the board's finding that respondent is disinterested in the outcome of this proceeding. I do not agree with that conclusion. In the testimony of respondent's superior officer, Richard Fishburn, at his place of employment, the record reveals the following:

"Q. Mr. Fishburn, if Mr. Rasor should be reinstated to the practice of law in the state of Ohio, do you have any plans for him with your company?

"A. Yes, we have plans, of course, whether Bob is reinstated or not reinstated, but it is very important to us.

"In fact, we initiated this, because we do need an in-house counsel, because there are more and more technical matters in our factory * * *."

In counsel for respondent's opening statement to the panel he stated:

"And his [respondent's] purpose of wanting rein-

30

statement comes from the company. If he would be permitted to practice law again, it would be in the capacity of working for Gerstenslager as house counsel.''

In *Reinstatement of Kearns* (1971), 28 Ohio St. 2d 121, 276 N. E. 2d 650, this court laid down guidelines for reinstatement to the practice of law. Other than respondent's good character there is nothing in the record to show that the respondent herein has complied with the requirements for reinstatement.

I would confirm the report of the Board of Commissioners on Grievances and Discipline.

O'NEILL, C. J., concurs in the foregoing dissenting opinion.