Application of Elmo T. CHRISTIANSON
for Reinstatement in the Bar of the
State of North Dakota.

GRIEVANCE COMMISSION, Petitioner,

v.

Elmo T. CHRISTIANSON, Respondent.

Civ. Nos. 8520, 8761.

Supreme Court of North Dakota.

Feb. 22, 1977.

Gregory D. Morris, Bismarck, for Grievance Commission.

Herschel I. Lashkowitz, Fargo, for respondent.

VOGEL, Justice.

This is a motion for a hearing and oral argument by Elmo T. Christianson concerning Mr. Christianson's latest petition for reinstatement into the Bar of North Dakota. Mr. Christianson was initially admitted to practice in North Dakota in 1949. He was suspended from practice upon conviction of a felony in 1956. About one year later, he was reinstated. His second suspension from the Bar occurred on February 13, 1970. His subsequent petition for reinstatement was denied in 1972 on the ground that he had engaged in the practice of law while under suspension and on the ground of improper conduct. He reapplied in 1973, and reinstatement again was denied on the ground that he had practiced law while under suspension.

In August 1974, he reapplied. The Grievance Commission filed its findings and recommendations in March of 1975. It recommended that Christianson's suspension be continued or that he be required to retake the bar examination. In April 1975, the Supreme Court adopted the findings and one of the alternative recommendations and ordered that he not be reinstated until he had retaken and passed the State Bar examination. See *Application of Christianson*, 215 N.W.2d 920 (N.D.1974), which contains additional details as to the matters summarized above.

Mr. Christianson did not take the bar examination. Instead, he reapplied for reinstatement in July of 1976. In this petition, Christianson argues that he should not have to comply with the court's order to retake and pass the bar examination. The petition was referred to the Grievance Commission, which, in October of 1976, without a hearing, made findings and adverse recommendations which were filed with the court. In November of 1976, the Supreme Court denied the application for reinstatement. It is concerning this 1976 petition that Christianson moves for a hearing and oral argument.

I

The first question for decision is whether this court has the general power to require, as a condition of reinstatement of a disbarred or suspended attorney, the taking of a second bar examination by the applicant.

The power of this court to suspend and disbar attorneys, and to reinstate disbarred or suspended attorneys, is constitu-

tional and statutory and is included within the inherent powers of the court. Constitution of N.D., Sec. 87; Sec. 27–14–01, N.D. C.C.; *In re Christianson*, 175 N.W.2d 8 (N.D.1970); *In re Eaton*, 60 N.D. 580, 235 N.W. 587 (1931). As to reinstatement, it has been the rule of this court for a very long time that a judgment of disbarment or suspension reflects adversely upon the character of the attorney, and that in order to be reinstated the attorney has the burden of proving by satisfactory proof that he has overcome the adverse inference. *Application of Christianson*, 215 N.W.2d 920 (N.D. 1974); *In re Simpson*, 11 N.D. 526, 93 N.W. 918 (1903).

Apparently the taking of a second bar examination as a condition of reinstatement has not been required previously in this State. However, the inherent authority of the highest court of other States to require a reexamination on all or some of the subjects of the bar examination has been recognized frequently, ever since the Supreme Court of California, in 1925, held that it had discretionary authority to require reexamination of a disbarred attorney who applied for readmission. *In re Stevens*, 197 Cal. 408, 241 P. 88 (1925). That case was followed by a lower court decision which set forth guidelines for reference in making a determination as to whether to impose the requirement of a new examination. *In re Cate*, 77 Cal.App. 495, 247 P. 231 (1926). In *Friday v. State Bar*, 23 Cal.2d 501, 144 P.2d 564 (1943), the California court distinguished "suspension" (which in California allowed automatic reinstatement) from "disbarment," and said that the Board of Bar Examiners had no authority to recommend a reexamination. It went on to say that, assuming that the Supreme Court had the power to require a reexamination of a suspended or disbarred attorney, it should not exercise the power where the suspension was for only six months and was imposed on account of solicitation of business. However, in *Segretti v. State Bar*, 15 Cal.3d 878, 126 Cal.Rptr. 793, 544 P.2d 929 (1976), the California Supreme Court imposed a suspension and made it a condition of reinstatement that the suspended attorney take

an examination called the "Professional Responsibility Examination" relating primarily to legal ethics.

In Washington the disciplinary machinery provides for two kinds of examination, one for new applicants to be licensed as attorneys, and one for those previously licensed in Washington or elsewhere. See *Petition of Simmons*, 81 Wash.2d 43, 499 P.2d 874 (1972), and *Petition of Eddleman*, 79 Wash.2d 725, 489 P.2d 174 (1971). In Florida the rules require that one who has been disbarred may be readmitted only upon full compliance with rules and regulations governing admissions to the Bar. 32 F.S.A., 1976 P.P., Rule 11.10(4). In Wisconsin, in *State v. Brodson*, 11 Wis.2d 124, 103 N.W.2d 912 (1960), the question of the power of the court was not disputed, but the Supreme Court suspended for two years an attorney who had not practiced for approximately twenty years, had made his living as a gambler, and had been convicted of tax evasion. In the opinion the court made this statement, which has some relevance to the case now before us:

"We are further troubled by recognition of the fact that, since 1940, Brodson has not practiced law for twenty years. Before that date his practice was so meager that, even without office expense, he was unable to support his family. In the interval statutory and case law have experienced great changes. In justice to the public, to the bar, and to Brodson himself, we should not restore to him the right to practice law unless we have reasonable assurance that he is competent to do so. We find no better assurance of that than his successful passage of the examination given by the Board of State Bar Commissioners to applicants for license to practice." 103 N.W.2d 912, at 915.

The Arkansas court, in *In re Dodrill*, 538 S.W.2d 549 (Ark.1976), inferentially upheld the power to require reexamination. In that case a lower court had ordered reexamination as a condition of reinstatement and the attorney had not appealed. The Supreme Court held that the trial court had

authority to suspend conditionally, as a lesser penalty than disbarment.

Finally, in Ohio, where the rules permit imposition of a requirement of reexamination, and the applicant was willing to undergo reexamination, such a condition was imposed after the applicant's eight years of inactivity as a lawyer. *In re Rasor*, 40 Ohio St.2d 25, 317 N.E.2d 915 (1974).

■ We are satisfied that we have the inherent authority to require a reexamination by the State Bar Board as a condition of reinstatement of a suspended or disbarred attorney.

## II

The movant contends that procedural due process has been violated because the requirement of his retaking the bar examination was made not as part of the original order of suspension, but as part of the order conditionally allowing reinstatement, and without giving him an opportunity to appear and be heard before the Grievance Commission.

■ While there is some plausibility in this argument, we point out several facts. First, reinstatement is not a matter of right. It has long been the law that the applicant for reinstatement has the burden of proving his fitness for reinstatement. *Application of Christianson, supra* ; *In re Eaton, supra*. Second, the recommendation of the Grievance Commission in March, 1975, after Christianson's application for reinstatement was that we either deny the application or require the retaking of the bar examination. Third, since we had the authority to deny the application completely, leaving him suspended indefinitely, we had the authority to impose a lesser penalty such as the penalty imposed (a reinstatement conditioned upon his successfully passing the bar examination). See *In re Dodrill, supra.*

■ As for the hearing, we must look at the procedural situation at the time the right to a hearing is claimed to have existed. The suspension was in effect, with termination conditioned upon movant's passing the bar examination. The movant petitioned for reinstatement without having complied with the condition. He admitted that he had not complied with it, but asked to have the condition eliminated. The Grievance Commission had no power to change the condition. A hearing before the Commission would have served no useful purpose.

A hearing *was* granted before this court. One hearing is enough. It was there asserted that it was unfair and unreasonable to require a formerly admitted and presently suspended attorney to retake the bar examination.

■ We have pointed out that we have the power to do so. We believe that we also have the duty to do so, under the circumstances here existing. We have a duty to the movant, it is true, but we also have a duty to the public, which does business with lawyers. Our duty to the public is to make sure, to the best of our ability, that all lawyers have a minimum competence to advise clients and represent them.

The movant, through his own fault, has been out of the practice of law (except for a few isolated instances of practicing without a license) for the last seven years, and one additional year about twenty years ago. We are troubled, as the Wisconsin court was in *State v. Brodson, supra,* by the fact that the movant has been out of the practice of law during a time when great changes have been made in law and law practice—for example, the adoption of the North Dakota Rules of Criminal Procedure,[1] the adoption of the new North Dakota Rules of Evidence,[2] the adoption of North Dakota Rules of Appellate Procedure,[3] the

---

1. N.D.R.Crim.P., adopted August 17, 1973; effective November 1, 1973.

2. N.D.R.Ev., adopted December 1, 1976; effective February 15, 1977.

3. N.D.R.App.P., adopted December 13, 1972; effective March 1, 1973.

enactment of a new Criminal Code,[4] the enactment of a new Probate Code,[5] the elimination of the guest law,[6] the adoption of comparative negligence,[7] the abolition of governmental immunity,[8] and many other changes in doctrines which were in effect seven years ago.

As in the Wisconsin court said, in *State v. Brodson, supra,*

> "We find no better assurance of [competence] than his successful passage of the examination given . . . to applicants for license to practice." 103 N.W.2d 912, at 915.

We are not faced now with the question of what action, if any, we would take if a grievance were filed against a lawyer who had chosen not to practice for a period of years and then entered or reentered practice. We are satisfied that the power exists to require a reexamination or other proof of current competence. Whether that power would be exercised in any given case will depend on the facts of the case. As to general rules requiring competence of lawyers in areas of law in which they choose to work, see Code of Professional Responsibility, Canon 6; for an example of the trend toward a requirement of continuing education of the Bar, see, e. g., Rules 101–112 of Minnesota Board of Continuing Legal Education, 27B M.S.A., 1977 P.P., p. 77; and Iowa's continuing legal education Rule 123, 40 I.C.A. Chap. 610 App., 1976 P.P., p. 26. This court will consider, on March 1, 1977, a proposal for continuing legal education of lawyers in North Dakota.

ERICKSTAD, C. J., AND PAULSON, J., concur.

SAND, J., disqualified.

PEDERSON, Justice (dissenting).

The majority opinion is grounded upon two factors: (a) a judgment of disbarment or suspension reflects adversely upon the character of an attorney, and (b) it is this Court's duty to the public to make sure, to the best of its ability, that all lawyers have a minimum competence to advise clients and represent them. Because Christianson has been out of the practice of law for the last seven years, the majority requires that he now take and pass the bar examination before he will be readmitted to the practice of law.

My concern involves three questions: (1) Are we obligating ourselves to establish a system for reexamining all lawyers who have been out of the practice for seven or more years; (2) Does the regular bar examination really test competence to advise clients and represent them; and (3) Does the adverse reflection upon character, arising out of a disciplinary proceeding, require more than evidence of good character and knowledge of the rules of professional responsibility?

I see much trouble for us and for the profession of law arising out of question number (1). There appears to be no easy solution.

Many scholars have reflected on question number (2). There is very little agreement as to the evaluation of something as undefinable as competence in the legal profession. A test designed to reflect the scholarship of a student may not reflect upon the intangible requirements of competence.

The third question appears to be the only one that can be responded to with any degree of certainty. We should follow the practice adopted by the California Supreme Court in *Segretti*, cited in the majority opinion, and require Christianson, and all

---

**4.** Crim.Code, Title 12.1, N.D.C.C., enacted as Chap. 116, 1973 Session Laws; effective July 1, 1975.

**5.** Uniform Probate Code, Title 30.1, N.D.C.C., enacted as Chap. 257, 1973 Session Laws; effective July 1, 1975.

**6.** Guest law declared unconstitutional by *Johnson v. Hassett*, 217 N.W.2d 771 (N.D.1974).

**7.** Chap. 78, 1973 Session Laws; and see *Wentz v. Deseth*, 221 N.W.2d 101 (N.D.1974).

**8.** *Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974).

disbarred and suspended lawyers in the future, to submit to a reexamination of his knowledge and understanding of the requirements of professional rules of conduct.