1998 ND 134

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Shirley A. DVORAK, a Member of the Bar of the State of North Dakota.

DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,

v.

Shirley A. DVORAK, Respondent.

Civil No. 970341.

Supreme Court of North Dakota.

June 30, 1998.

Paul W. Jacobson (argued), Assistant Disciplinary Counsel, Bismarck, for petitioner.

Kermit E. Bye (argued), of Vogel, Kelly, Knutson, Weir, Bye & Hunke, Ltd., Fargo, for respondent.

PER CURIAM.

[¶ 1] The Disciplinary Board petitions for reciprocal discipline under North Dakota Rules for Lawyer Discipline (NDRLD) 4.4, recommending discipline identical to that imposed by the Minnesota Supreme Court be imposed on Shirley A. Dvorak. *See In re Disciplinary Action Against Dvorak,* 554 N.W.2d 399 (Minn.1996). We accept the

Board's recommendation and impose the identical discipline.

## I

[¶ 2] Dvorak was admitted to practice law in North Dakota in 1976 and has spent her entire professional career with the Moosbrugger, Dvorak & Carter law firm in Grand Forks. She was also admitted to practice in Minnesota in 1981 and in Florida in 1992.

[¶ 3] In 1995 the Director of the Minnesota Office of Lawyers Professional Responsibility filed a petition for public discipline against Dvorak alleging she improperly billed Minnesota clients in a bankruptcy case.[1] Following a hearing, a referee concluded fees Dvorak charged Alex and Edna Wald for handling their bankruptcy violated Minnesota Rules of Professional Conduct (MRPC) 3.4(c) and 1.5(a). The Minnesota Supreme Court explained the factual background:

> The Walds hired Dvorak to represent them in the Chapter 11 bankruptcy of their farming operation in May 1985. The Walds orally agreed to pay Dvorak a retainer of $5,000 and made an initial payment of $2,700 toward that retainer. Their fee arrangement was outlined in the required Statement Pursuant to Rule 2016(b) filed with the bankruptcy court. On February 26, 1987, Dvorak submitted an Application for Administrative Compensation Allowance to the bankruptcy court seeking total compensation of $20,075.27, including costs. After a hearing, the court awarded the firm $10,000 in fees and $3,566.52 in costs, for a total of $13,566.52. Dvorak appealed the compensation award.
>
> The Walds subsequently voluntarily settled with their creditors. Before the bankruptcy was officially dismissed by the court and while appeal of the fee award was pending, however, Dvorak collected an additional $11,332.42 in fees from the Walds. Along with other interim payments, this brought the Walds' total fee payments to $19,647.42 and exceeded the bankruptcy

court's order by $6,080.90. In 1992, after the Walds were contacted by an Internal Revenue Service agent investigating the Moosbrugger firm, they sought, and ultimately received, a refund from Dvorak and the firm in the amount of $6,080.90 in fees and $3,949.34 in interest.

*Dvorak,* 554 N.W.2d at 401.

[¶ 4] Dvorak challenged the referee's conclusion that, in her billing of the Walds, she knowingly disobeyed a bankruptcy court order in violation of MRPC 3.4(c) and, in so doing, charged an unreasonable fee in violation of MRPC 1.5(a). The Minnesota Supreme Court, however, ruled neither of the referee's conclusions were clearly erroneous. *Dvorak,* 554 N.W.2d at 403. In imposing a sanction, the Court considered as mitigating factors Dvorak's settlement of the fee dispute to the Walds' satisfaction before disciplinary proceedings were brought, Dvorak's lack of a disciplinary record in Minnesota during 15 years of practice there, Dvorak's substantial personal problems during the period in question, Dvorak's cooperation in the disciplinary investigation, Dvorak's substantial contribution of pro bono and volunteer work to her community, and Dvorak's outstanding reputation for honesty and hard work within the profession. *Dvorak,* 554 N.W.2d at 404. The Court concluded "a 30-day suspension from the practice of law ... is the appropriate sanction on this record." *Dvorak,* 554 N.W.2d at 404–405.

[¶ 5] After the Disciplinary Board received a certified copy of the Minnesota Supreme Court's decision, the Board notified Dvorak of its intention to impose the identical discipline on her in North Dakota. Dvorak demanded a hearing, denied any wrongdoing, and asked this Court to dismiss the matter. On May 22, 1997, a hearing was held before three members of the Board. The hearing body recommended imposition of the identical discipline imposed by the Minnesota Supreme Court. The Board adopted the find-

---

1. Originally, the petition sought discipline for Dvorak's conduct leading to her plea of guilty in federal court in North Dakota to a misdemeanor count of filing a false tax return. This petition was later amended to also seek discipline for Dvorak's billings in the bankruptcy case. The Minnesota Supreme Court, as we had previously done, issued Dvorak a public reprimand for filing the false tax return. *See Dvorak,* 554 N.W.2d at 404. The present disciplinary action focuses solely on Dvorak's actions involving the bankruptcy proceedings.

ings and recommendations of the hearing body, concluding Dvorak should be suspended from the practice of law in North Dakota for 30 days and pay $2,133.20 in costs and expenses incurred in these proceedings. The Board submitted the matter to this Court for consideration.

## II

[¶ 6] There are clear and specific disciplinary rules governing this Court's duty when a lawyer, who is admitted to practice in this state, has been disciplined in another jurisdiction. NDRLD 4.4(D) provides:

> D. *Discipline.* ... [T]he court shall impose the identical discipline unless the lawyer demonstrates and the court finds that upon the face of the record from which the discipline is predicated, it clearly appears that:
>
> (1) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
>
> (2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the court could not, consistent with its duty, accept as final the conclusion on that subject; or
>
> (3) The imposition of the same discipline by the court would result in grave injustice; or
>
> (4) The misconduct established warrants substantially different discipline in this state.
>
> If the court determines that any of those elements exists, the court shall enter such other order as it deems appropriate. In all other aspects, a final determination in another jurisdiction that a lawyer has been guilty of misconduct establishes conclusively the misconduct for purposes of a disciplinary proceeding in this state.

A lawyer who has been disciplined in another jurisdiction has the burden to demonstrate that identical, reciprocal discipline should not be imposed. *Disciplinary Action Against Lochow,* 502 N.W.2d 252, 253 (N.D.1993).

## A

[¶ 7] Dvorak asserts the proceedings in Minnesota were so lacking in adequate notice and a fair opportunity to be heard that her due process rights were violated.

### 1

[¶ 8] Dvorak claims she was not given fair and adequate notice of the charges concerning the Wald bankruptcy fees. Attorneys subjected to disciplinary proceedings are entitled to procedural due process, including fair notice of the charges against them. *See Matter of Ellis,* 504 N.W.2d 559, 562 (N.D.1993); *In re Eaton,* 60 N.D. 580, 235 N.W. 587, 592 (1931). However, on this record, Dvorak has failed to establish a lack of fair notice of the charge against her.

[¶ 9] An original petition for disciplinary action concerning Dvorak's filing of a false tax return was instituted in May 1995. Dvorak answered the petition in June 1995. In late August 1995, the Minnesota Office of Lawyers Professional Responsibility asked Dvorak's counsel specific questions concerning Dvorak's involvement with the Wald bankruptcy and requested documents relating to Dvorak's representation. Dvorak's counsel complied with the request, asking disciplinary authorities to "review these enclosures, make whatever additional investigation you deem necessary, and thereafter I am confident you will conclude that the Wald matter is not anything upon which to base, at this extremely late date, a disciplinary proceeding against ... Dvorak." In a September 14, 1995 letter, disciplinary authorities again requested answers to "several specific questions" and requested several other documents not previously provided. On September 28, 1995, Dvorak's counsel complied with the request, arguing it was "grossly unfair to ... Dvorak to have her bear the brunt of a mammoth investigation undertaken by your office," and requested "after you have reviewed the enclosures, and have satisfied yourself that you have learned as much as you care to concerning this Wald bankruptcy, that this investigation be concluded and that we get on with the hearing based on the presently pending petition...."

[¶ 10] An amended supplementary petition for disciplinary action alleging unprofessional conduct in regard to the Wald bankruptcy was served on Dvorak on November 8, 1995. The hearing on the amended supplemental petition was held on December 4 and 5, 1995. The record of those proceedings does not reflect Dvorak requested a continuance in order to have further time to prepare to defend the charges concerning the Wald bankruptcy. Rather, in defense of the bankruptcy charge, Dvorak relied on the telephone deposition testimony of a local bankruptcy law expert.

[¶ 11] Against this backdrop, Dvorak relies on the United States Supreme Court's decision in *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), to support her argument that she was denied due process. In *Ruffalo,* a lawyer who handled Federal Employer's Liability Act (FELA) cases was charged by the bar association with a number of violations of the disciplinary rules, including his use of a part-time employee to solicit FELA clients. During the hearing, it was revealed that the part-time employee was also employed by one of the railroads against which the lawyer had brought some of his cases. The bar association immediately added this charge against the lawyer in the midst of the hearing and stated his employment of the part-time employee to investigate the employee's employer "was deceptive in its nature and was morally and legally wrong...." *Ruffalo,* 390 U.S. at 547, 88 S.Ct. 1222. The attorney was disbarred on this basis.

[¶ 12] The Supreme Court reversed the lawyer's subsequent disbarment, as reciprocal discipline, in federal court, because the lawyer had no notice that the employment of the part-time employee would be considered a disbarment offense until after he had testified at length on all material facts pertaining to that phase of the case. The Court reasoned the disbarment proceedings were "adversary proceedings of a quasi-criminal nature ... [which] bec[a]me a trap when, after they [were] underway, the charges [were] amended on the basis of testimony of the accused." *Ruffalo,* 390 U.S. at 551, 88 S.Ct. 1222.

[¶ 13] The Supreme Court has since noted that, although the majority in *Ruffalo* held a change in the charges during the proceedings violated the lawyer's due process rights, the "particularly offensive" feature of the case was "the change was such that the very evidence put on by the [lawyer] in defense of the original charges became, under the revised charges, inculpatory." *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 655 n. 18, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). *See also Matter of Smith,* 403 A.2d 296, 301 (D.C.Ct.App.1979) (attorney in *Ruffalo* was not denied due process because bar association failed to give him timely notice of additional charge, but because bar association failed to give him prior notice that his conduct was a disbarment offense, with the consequence that lawyer was trapped into admitting he committed a disciplinary violation).

[¶ 14] The circumstances in this case are a far cry from those present in *Ruffalo.* *Ruffalo* involved material facts provided through oral testimony at a hearing, while this case involves material facts and documents provided in writing during the preliminary investigatory phase of the case. We have noted "[p]rocedural due process has modest application at the investigative stage." *Commission on Medical Competency v. Racek,* 527 N.W.2d 262, 265 (N.D. 1995). Moreover, the correspondence between disciplinary counsel and Dvorak's counsel demonstrates Dvorak's awareness of the possibility of additional disciplinary charges based on the Wald bankruptcy. Although a formal charge was brought only about one month before the hearing, Dvorak did not ask for a continuance and presented expert evidence to support her position. Dvorak has not explained what more she would have done had she been given formal notice of the Wald bankruptcy charge at an earlier date. We conclude Dvorak was not denied adequate and fair notice of the charges brought against her in the amended supplementary petition.

2

[¶ 15] Dvorak asserts she was denied due process because of the different standard

of review used by the Minnesota Supreme Court in reviewing the findings of a disciplinary hearing body. In reviewing the findings of a referee in a disciplinary proceeding, the Minnesota Supreme Court employs the "clearly erroneous" standard. *See Dvorak,* 554 N.W.2d at 403. This Court reviews disciplinary proceedings against attorneys de novo on the record under a clear and convincing standard of proof. *See Matter of Montgomery,* 1997 ND 148, ¶ 5, 566 N.W.2d 426. Dvorak asserts the Minnesota Supreme Court's use of the more deferential "clearly erroneous" standard, rather than the de novo standard employed by this Court, denied her due process under North Dakota law. We disagree.

[¶ 16] Dvorak relies on numerous cases in which courts have constitutionally mandated under the due process clause minimum standards of proof in particular types of proceedings where substantial rights are at stake. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (due process requires clear and convincing evidence standard of proof for parental rights terminations). However, an evidentiary standard of proof differs from a standard of review employed by an appellate court to a decision in which the standard of proof has already been applied, and none of the cases cited by Dvorak suggest there is a constitutionally mandated standard of review for an appellate court.

[¶ 17] In C. Wolfram, *Modern Legal Ethics* § 3.4 at p. 109 (1986), the author notes the standards of proof in disciplinary proceedings vary, with some courts using the preponderance of the evidence standard, others using the clear and convincing evidence standard, and others using the evidence beyond a reasonable doubt standard. Minnesota applies the clear and convincing evidence standard in attorney disciplinary proceedings. *See In re Disciplinary Action Against Randall,* 562 N.W.2d 679, 683 (Minn.1997). The author also observes the standards for judicial review vary, with some courts using the "any competent evidence" standard, others using the substantial evidence standard, and others using the de novo standard. C. Wolfram, § 3.4 at pp. 111–112. Dvorak's

failure to cite any case constitutionally mandating under the due process clause a certain standard of review is probably attributable to the lack of any due process right to appellate review.

[¶ 18] We have recognized that an appeal from a judgment, even in a criminal case, is not a necessary element of due process under the federal constitution. *State v. Higgins,* 145 N.W.2d 478, 481 (N.D.1966). *See also Johnson v. Fankell,* 520 U.S. 911, —— n. 13, 117 S.Ct. 1800, 1807 n. 13, 138 L.Ed.2d 108 (1997); *McKane v. Durston,* 153 U.S. 684, 688, 14 S.Ct. 913, 38 L.Ed. 867 (1894). Using this reasoning, courts have rejected any suggestion that due process requires that a court which makes final and binding factual determinations in a disciplinary proceeding actually hear the witnesses' testimony. *See Mildner v. Gulotta,* 405 F.Supp. 182, 195 (E.D.N.Y.1975), *aff'd* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (per curiam); *Razatos v. Colorado Supreme Court,* 549 F.Supp. 798, 801 (D.Colo.1982), *aff'd* 746 F.2d 1429 (10th Cir.1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985). If there is no due process right to appellate review, it is difficult to perceive how due process could nevertheless mandate any type of standard for appellate review. As the Supreme Court said in *Kohl v. Lehlback,* 160 U.S. 293, 299, 16 S.Ct. 304, 40 L.Ed. 432 (1895), "the right of review in an appellate court is purely a matter of state concern."

[¶ 19] While use of the "clearly erroneous" standard might place an attorney at somewhat of a disadvantage when attempting to overturn an adverse finding of a hearing body, Dvorak has not convinced us that the use of the "clearly erroneous" standard by the Minnesota Supreme Court, rather than the de novo standard used in this jurisdiction, amounts to a denial of her due process rights.

B

[¶ 20] Dvorak asserts there was such an infirmity of proof in the Minnesota proceedings establishing the misconduct so as to give rise to the clear conviction that this Court cannot accept as final the conclusions of the Minnesota Supreme Court. Dvorak

claims there was an infirmity of proof that she knowingly disobeyed the bankruptcy court's order by collecting $6,080.90 in excess fees from the Walds in violation of MRPC 3.4(c), *compare* NDRPC 3.4(c), and an infirmity of proof that the attorney fees collected from the Walds were unreasonable in violation of MRPC 1.5(a), *compare* NDRPC 1.5(a).

[¶ 21] Dvorak's argument on this issue is essentially an attempt to retry the Minnesota disciplinary proceedings. However, to prevail in a reciprocal disciplinary proceeding, Dvorak must convince us from the face of the record there was an infirmity of factual support for the disciplinary authority's findings. There is evidence in the record from which Minnesota disciplinary authorities could find Dvorak knew of the bankruptcy court order and violated the order by charging the Walds more than the bankruptcy court had awarded her as a fee. Disciplinary authorities could also find the fees were unreasonable. The Minnesota Supreme Court dealt with her defenses and explanations in its opinion, but simply rejected them. We conclude there was no infirmity of proof in the Minnesota proceedings to support imposition of discipline against Dvorak.

### C

■ [¶ 22] Dvorak asserts the imposition of the same discipline by this Court would result in grave injustice because the Minnesota Supreme Court applies a different standard of review than does this Court, there has been a 10–year delay between the conduct alleged and the proceedings here, the imposition of identical discipline would not serve to protect the public at this late date, and the imposition of a 30–day suspension in Minnesota was exacerbated by the multiple allegations of misconduct.

[¶ 23] If we were to accept Dvorak's argument that use of the clearly erroneous standard of review by the Minnesota Supreme Court created a grave injustice, we would hold NDRLD 4.4 on reciprocal discipline is inapplicable to discipline imposed on a lawyer by any court which does not use, as does this Court, the de novo standard of reviewing the findings of a hearing body. We decline to do

so. Contrary to Dvorak's suggestion, there is nothing inherently evil or unjust about appellate court review under the clearly erroneous standard. Merely because the Minnesota Supreme Court uses the more deferential clearly erroneous standard in reviewing the referee's findings does not render imposition of reciprocal discipline gravely unjust.

■ [¶ 24] We are concerned about the 10–year delay between the conduct alleged in the Wald bankruptcy and commencement of this reciprocal disciplinary proceeding. *See* Annot., *Attorneys at Law: Delay in Prosecution of Disciplinary Proceeding as Defense or Mitigating Circumstance,* 93 A.L.R.3d 1057 (1979); *In re Crum,* 55 N.D. 876, 215 N.W. 682, 688–689 (1927) (reducing sanction from disbarment to six-month suspension where offense occurred more than six years before disciplinary action commenced). However, it was apparently the investigation into the charge of filing a false tax return that led Minnesota disciplinary authorities to investigate the Wald bankruptcy matter. Minnesota disciplinary authorities, as well as the Minnesota Supreme Court, were aware of the already lengthy delay when the Minnesota proceedings were commenced. Further delay in these proceedings were caused by Dvorak's request for a hearing on the petition for reciprocal discipline. Nevertheless, the misconduct was serious. Under these circumstances, we cannot say the delay in commencing the reciprocal disciplinary proceeding results in a grave injustice or that the purpose of protecting the public would not be served by imposing identical discipline on Dvorak.

[¶ 25] Dvorak's claim that the discipline imposed by the Minnesota Supreme Court was exacerbated by its consideration of the Wald bankruptcy and the tax matter together is without merit. Although both the tax matter and the Wald bankruptcy were considered in the Minnesota Supreme Court's opinion, it is clear that the Court imposed a public reprimand for the tax return violation and imposed the 30–day suspension for the misconduct involving the Wald bankruptcy. *See Dvorak,* 554 N.W.2d at 404–405. The Court did not consider the tax matter and

the Wald bankruptcy together in imposing the 30-day suspension.

## D

[¶ 26] Dvorak asserts the misconduct established in the Minnesota proceedings warrants substantially different discipline in this state. Dvorak relies on other cases in this jurisdiction involving a single charge of misconduct in collecting fees in violation of NDRPC 1.5, where only probation, an admonition, or a public reprimand has been given as a sanction. However, while we attempt to impose similar disciplinary measures for similar violations under similar circumstances, we have also recognized that each disciplinary case must be decided on its own particular facts. *See Disciplinary Action Against LaQua*, 548 N.W.2d 372, 373 (N.D.1996).

[¶ 27] Under North Dakota Standards For Imposing Lawyer Sanctions (NDSILS) 6.22, "[s]uspension is generally appropriate when a lawyer knows that he or she is violating a court order ... and causes injury or potential injury to a client...." Suspension is also "generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." NDSILS 7.2. The discipline imposed by the Minnesota Supreme Court is within the realm of that which could have been imposed under NDSILS. *See Lochow*, 502 N.W.2d at 254. Dvorak's misconduct does not warrant substantially different discipline in this state.

## E

[¶ 28] Dvorak asserts the Board failed to consider mitigating circumstances in imposing discipline identical to that imposed by the Minnesota Supreme Court. Only new mitigating circumstances not taken into consideration by the foreign jurisdiction may warrant different discipline in this state. *See Lochow*, 502 N.W.2d at 255. Most of the "new" mitigating circumstances were either expressly considered by the Minnesota Supreme Court in its decision, or are merely slight variations of circumstances presented to that Court, and we deem them to have been considered in the foreign proceedings.

The only "new" mitigating circumstances occurring after discipline was imposed in Minnesota are the devastating effect the 1997 flood in Grand Forks had on Dvorak's law firm and law practice, and personal problems resulting from a May 1997 divorce from her husband of 10 years. While we sympathize with Dvorak over her personal problems, and with the residents of Grand Forks who have had to deal with the flood and its aftermath, we are not persuaded these circumstances warrant discipline different than that imposed by the Minnesota Supreme Court.

## III

[¶ 29] We order that Dvorak be suspended from the practice of law in North Dakota for a period of 30 days, effective August 8, 1998, and that she pay $2,133.20 in costs and expenses incurred in these proceedings.

[¶ 30] VANDE WALLE, C.J., and MARING, NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

