2000 ND 146

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Thomas W. ROBB, a Person Admitted to the Bar of the State of North Dakota.

No. 20000096.

Supreme Court of North Dakota.

July 20, 2000.

See also, 1999 ND 161, 598 N.W.2d 808.

Loralyn K. Hegland, Assistant Disciplinary Counsel, Bismarck.

PER CURIAM.

[¶ 1] Disciplinary Counsel objects to the Disciplinary Board's dismissal of a petition for discipline against Thomas W. Robb. We hold Disciplinary Counsel has proven by clear and convincing evidence Robb violated N.D.R. Prof. Conduct 1.15(a) and 5.5(a). We reverse the Disciplinary

Board's dismissal and suspend Robb for a period of one year.

## I

[¶ 2] In 1996, Robb began representing Amber Leno in a divorce case and a personal injury case. Robb sent a letter dated January 31, 1997, to the district court regarding the value of Leno's and her husband's property under N.D.R.Ct. 8.3.

[¶ 3] In early 1997, Leno's husband subpoenaed Robb to appear at a hearing on February 3, 1997, and to bring any and all documents relating to the settlement of Leno's personal injury case. Robb attended the hearing, but Leno herself did not attend. At the beginning of the hearing, the court pointed out Robb had not paid his 1997 license fees:

THE COURT: Okay. [Supreme Court personnel] indicate that you haven't paid your '97 fees.

ROBB: Well that's true. Your Honor, you know, it's never been a problem. I go on vacation every year in Mexico in February and when I get back from Mexico in March, I pay my fees. No, I have not paid my fees, Your Honor.

THE COURT: Okay.

ROBB: Well then I guess I can't appear for my client.

Later during the hearing, Robb testified he reached an agreement to settle Leno's personal injury case for $6,000; he received two settlement checks, one made out to Leno for about $3,050 and one made out to himself for the remainder of the $6,000; and he sent Leno's check to her.

[¶ 4] On July 2, 1999, Disciplinary Counsel filed a petition for discipline against Robb. Disciplinary Counsel alleged, in part, Robb violated N.D.R. Prof. Conduct 1.15(a) by failing to keep Leno's share of the personal injury settlement proceeds separate from his own property and N.D.R. Prof. Conduct 5.5(a) by practicing law in 1997 despite not having paid his 1997 law license fee.[1]

[¶ 5] A hearing was held before the Hearing Body of the Disciplinary Board on October 6, 1999. Regarding his alleged failure to properly safekeep client property, Robb testified he had a one-third contingency fee agreement with Leno on her personal injury case, he reached an agreement to settle that case for $6,000, and Leno received only about $3,050 of the settlement proceeds. He testified he requested two settlement checks, he "sent [Leno's check] [to her] the minute [he] got it and put [his] in [his] pocket," he did not "see anything but trouble using [trust accounts]," and he was "going to get rid of the trust account because this is the way [he does] personal injuries." Robb also testified "[$]2,000 for the amount of work [he] did would have been sufficient ... [it] should have been [$]4,000 and [$]2,000," he had no intent to "rip[ ] her off," and he could not remember why the proceeds were divided differently. Regarding his alleged unauthorized practice of law, the following exchange occurred:

DISCIPLINARY COUNSEL: ... Why hadn't you obtained a license for 1997 at the time of [the February 3, 1997] hearing?

ROBB: I had just returned from vacation. I was down in Mexico for three weeks. And I walked ice cold into this divorce trial I really wasn't ready for and I simply hadn't gone up to the capitol and renewed my license.

Robb later indicated he had "forgotten to renew" his license. Robb's letter of January 31, 1997 to the court regarding Leno's divorce case was admitted into evidence. An opinion of this Court involving a prior disciplinary action against Robb, *Disciplinary Board v. Robb*, 1999 ND 161, 598 N.W.2d 808, also was admitted. The opinion imposed a 60–day suspension on Robb, indicating Robb violated N.D.R. Prof. Conduct 3.4(c) and 1.16(e), Robb has substan-

---

1. Disciplinary Counsel included other alleged violations in the petition for discipline but did not raise issues regarding those violations in its brief to this Court.

tial experience in the practice of law as he was admitted to practice in North Dakota in 1975, and Robb had four prior disciplinary offenses. *Robb,* at ¶¶ 2, 5, 9, 11.

[¶ 6] The Hearing Body issued a report in November 1999. Emphasizing Robb testified that upon receiving the settlement checks he immediately mailed Leno's check to her, the Hearing Body concluded there was not clear and convincing evidence Robb had violated N.D.R. Prof. Conduct 1.15. Finding Robb merely served as a witness at the February 3, 1997 hearing and there was no other evidence which indicated the unauthorized practice of law, the Hearing Body concluded there was not clear and convincing evidence Robb had violated N.D.R. Prof. Conduct 5.5. The Hearing Body recommended dismissal of the petition against Robb.

[¶ 7] In an order dated March 20, 2000, the Disciplinary Board adopted the Hearing Body's report and dismissed the petition. Disciplinary Counsel filed objections to the dismissal.

## II

[¶ 8] Under N.D.R. Lawyer Discipl. 3.1(F)(1), we may review the dismissal of a petition for discipline. *See* N.D.R. Lawyer Discipl. 6.6 (indicating "[t]hese rules, as amended, become effective on July 1, 1999" and "[a]ny matter then pending with respect to which a formal hearing has been commenced shall be concluded under the procedure existing prior to the effective date of these rules"). We review disciplinary proceedings against attorneys de novo on the record. *Disciplinary Board v. Boughey,* 1999 ND 205, ¶ 8, 602 N.W.2d 268. Disciplinary Counsel must prove each violation by clear and convincing evidence. *Disciplinary Action Against Dvorak,* 2000 ND 98, ¶ 8, 611 N.W.2d 147. Although we give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, we are not merely a rubber stamp, and we decide each proceeding upon its own facts. *Boughey,* at ¶ 8.

### A

[¶ 9] Disciplinary Counsel contends there is clear and convincing evidence Robb violated N.D.R. Prof. Conduct 1.15(a). Under N.D.R. Prof. Conduct 1.15(a):

> A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be deposited in one or more identifiable interest bearing trust accounts ....

If an attorney commingles and converts client property for the attorney's own use, the attorney violates the rule. *Disciplinary Action Against Anderson,* 491 N.W.2d 703, 703 (N.D.1992).

[¶ 10] Here, clear and convincing evidence shows Robb violated N.D.R. Prof. Conduct 1.15(a) by failing to hold a portion of Leno's settlement proceeds separate from his own property. Although Robb testified that upon receiving the settlement checks, he immediately sent Leno's check to her, he conceded Leno's check was for about $3,050 and she should have received $4,000 under their contingency fee agreement. Leno thus received approximately $950 less than her share and Robb received approximately $950 more than his share. Since Robb testified he put the proceeds from his check "in [his] pocket," Robb commingled approximately $950 of Leno's money with his own property, thereby violating N.D.R. Prof. Conduct 1.15(a).

### B

[¶ 11] Disciplinary Counsel argues there is clear and convincing evidence Robb violated N.D.R. Prof. Conduct 5.5(a). Under N.D.R. Prof. Conduct 5.5(a), "[a] lawyer shall not ... practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

[¶ 12] Section 27–11–22, N.D.C.C., provides:

> Every person who has an unrevoked certificate of admission to the bar of this state and who desires to engage in the practice of law ... shall secure an annual license from the state bar board on or before January first of each year....

[¶ 13] Here, clear and convincing evidence shows Robb violated N.D.R. Prof. Conduct 5.5(a) by practicing law before he had renewed his license as required by N.D.C.C. § 27–11–22. Robb asserts the transcript from the February 3, 1997 hearing indicates he only acted as a witness after the court pointed out he had not renewed his license. Robb's January 31, 1997 letter to the court, however, clearly shows he practiced law before he had renewed his license for 1997. In the letter, Robb provided the court with information regarding Leno's property relevant to her divorce case. Robb's explanation he annually vacationed during February and renewed his license in March and "it's never been a problem" suggests he has repeatedly practiced law in January prior to renewing his license.

## III

[¶ 14] In determining the proper sanction for lawyer misconduct, we consider: (1) the duty violated, (2) the lawyer's mental state, (3) the potential or actual injury caused by the misconduct, and (4) aggravating or mitigating factors. N.D. Stds. Imposing Lawyer Sanctions 3.0. Here, we address the first three considerations while discussing each of Robb's violations, and we then address aggravating factors.

[¶ 15] Robb violated his duty to safekeep client property. "Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." N.D. Stds. Imposing Lawyer Sanctions 4.12. Robb testified he did not recall why the settlement proceeds were divided in a manner inconsistent with the contingency fee agreement and he "would not have ripped [Leno] off." Despite his testimony he would not have intended to injure his client, Robb should have known the division of the proceeds was inconsistent with the fee agreement. Robb also should have known his method of dealing with personal injury settlement proceeds by requesting two checks and, upon receipt of the checks, sending the client's check to the client avoids the protections trust accounts provide clients. His method promotes his own interest in convenience and illustrates his clear disregard for his duty to safekeep client property. Robb's violation caused injury to Leno since she received approximately $950 less than she was entitled to under the fee agreement. Robb's violation of N.D.R. Prof. Conduct 1.15(a) thus justifies a suspension.

[¶ 16] Robb also violated his duty to secure his annual law license prior to practicing law in 1997. Disbarment is "generally appropriate" as a sanction for the unauthorized practice of law "when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." N.D. Stds. Imposing Lawyer Sanctions 7.1. "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." N.D. Stds. Imposing Lawyer Sanctions 7.2. Robb's letter and his explanation he often renewed his license in March after his February trip indicate he knowingly violated his duty to timely secure a law license. Robb's knowing violation shows disrespect for the law and thus causes injury to the legal system. His conduct in sending the letter did not cause serious or potentially serious injury to Leno, the public, or the legal system. The letter merely provided information to the court regarding Leno's

property and did not appear to effect Leno's case. Disciplinary Counsel conceded "[s]erious injury to Robb's client, the public or the legal system were [sic] not alleged." However, the record reflects Leno was not present at the hearing where Robb testified. Her interests were thus unrepresented by counsel after Robb acknowledged he could not appear on her behalf. Proceeding without representation had the potential to cause injury to Leno. Robb's violation of N.D.R. Prof. Conduct 5.5(a) thus does not warrant disbarment but does warrant suspension.

[¶ 17] The record shows aggravating factors exist. Aggravating factors include "multiple offenses," "substantial experience in the practice of law," "prior disciplinary offenses," and "a pattern of misconduct." N.D. Stds. Imposing Lawyer Sanctions 9.22(d), (i), (a), and (c). In this proceeding, Robb has multiple offenses because he violated both N.D.R. Prof. Conduct 1.15(a) and 5.5(a). Robb has substantial experience in the practice of law as he was admitted to practice law in North Dakota in 1975. Finally, Robb has a pattern of misconduct which includes five prior disciplinary offenses: first, reprimand for violating N.D.R. Lawyer Discipl. 1.2(A)(2); second, public reprimand for violating Disciplinary Rule 7–101(A)(1) and (2) of the Code of Professional Responsibility and N.D.R. Prof. Conduct 1.3, 1.4(a) and 1.5; third, private reprimand for violating N.D.R. Prof. Conduct 1.3 and 1.4; fourth, private reprimand for violating N.D.R. Prof. Conduct 1.3 and 1.4, North Dakota Procedural Rules for Lawyer Disability and Discipline 1.2(a)(3), and N.D.R. Prof. Conduct 1.5(C); and fifth, 60–day suspension for violating N.D.R. Prof. Conduct 3.4(c) and N.D.R. Prof. Conduct 1.16(e). *See Disciplinary Board v. Robb*, 1999 ND 161, ¶¶ 5, 9, 11, 598 N.W.2d 808.

[¶ 18] In light of the injury to Leno by Robb's violation of N.D.R. Prof. Conduct 1.15(a), Robb's knowing violation of N.D.R. Prof. Conduct 5.5(a), and the significant aggravating factors, we conclude Robb's misconduct warrants a suspension from the practice of law for a period of one year. This discipline is severe; however, we have indicated our orders "are not 'empty noise,' but are intended to protect the public." *See Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 21, 611 N.W.2d 147. Since Robb is not currently licensed to practice law in North Dakota, his suspension will commence if and when he reapplies for a license. Before Robb may practice law again, he must apply for reinstatement in accordance with N.D.R. Lawyer Discipl. 4.5. We direct Robb to pay the costs of the disciplinary proceedings to be determined by the Disciplinary Board. *See id.*

## IV

[¶ 19] Because there is clear and convincing evidence Robb violated N.D.R. Prof. Conduct 1.15(a) and 5.5(a), we reverse the Disciplinary Board's dismissal of the petition against him. We suspend Robb for a period of one year, commencing if and when he reapplies for licensure, and direct him to pay costs.

[¶ 20] GERALD W. VANDE WALLE, C.J, CAROL RONNING KAPSNER, DALE SANDSTROM, WILLIAM NEUMANN, MARY MUEHLEN MARING, JJ., concur.