2001 ND 55

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Allan R. HAWKINS, a Person Admitted to the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,**

v.

**Allan R. Hawkins, Respondent.**

**No. 20000233.**

Supreme Court of North Dakota.

March 20, 2001.

Loralyn K. Hegland, Assistant Disciplinary Counsel, Bismarck, ND, for petitioner.

Allan R. Hawkins, pro se, Scottsdale, AZ, for respondent.

PER CURIAM.

[¶ 1]   On Petition for Reciprocal Discipline, Allan R. Hawkins filed objections to the report of the hearing panel before the Disciplinary Board of the North Dakota Supreme Court which recommended identical discipline to that imposed by the District Court of Midland County, Texas. Assistant disciplinary counsel also filed objections to the hearing panel's report.   We impose identical concurrent discipline, suspending Hawkins from the practice of law for one year and placing him on probation for three years.

## I

[¶ 2] In the mid–1970s, Hawkins was licensed to practice law in North Dakota and admitted to the North Dakota bar, serving as an Assistant State's Attorney where he handled some criminal defense matters. Hawkins currently is not licensed to practice law in North Dakota and does not intend to seek re-licensure in North Dakota. Hawkins was also licensed to practice law in Texas and admitted to the Texas bar, specializing in estate planning and taxation but also had handled some appointed criminal matters with co-counsel. In 1994, a Texas court order appointed Hawkins to represent a criminal defendant on a misdemeanor charge for possession of marijuana. Hawkins filed a Motion for Appointment of an Effective and Competent Attorney, contending he was not competent to practice criminal law and could not represent the defendant without violating Texas Disciplinary Rules of Professional Conduct. Nevertheless, on behalf of the defendant, Hawkins filed motions for a speedy trial, jury trial, production of evidence, appointment of experts, and a motion to suppress evidence. Hawkins also filed a request for a court reporter and statement of facts, as well as attending a docket call and appearing for a scheduled trial date, which was continued. When the defendant was offered a plea agreement, Hawkins sent the offer to the defendant but refused to discuss the merits of the offer or advise whether to accept the plea agreement. Hawkins then filed a second motion regarding his alleged incompetence to represent the defendant in the plea negotiations. At a hearing on the motion, the district court found Hawkins competent to represent the defendant and

ordered him to continue as appointed counsel. Hawkins sent a copy of the district court order to the defendant with a letter telling the defendant:

> [Judge] has decided that you are not entitled to a lawyer.
>
> Apparently you are only entitled to a lawyer if a cash pay-off is made. I will not make a cash pay-off to obtain judicial favoritism. I believe it is a crime. Apparently that means that you don't get a lawyer.[1]

When the defendant called Hawkins for an explanation, Hawkins stated he was no longer the defendant's attorney and the defendant should look for another lawyer. Hawkins received notice of the docket call, but he did not attend or notify the defendant, and subsequently neither one appeared for trial. Because of the defendant's failure to appear for trial, a warrant was issued for his arrest and a proceeding was initiated to forfeit his bond. When the defendant received notice the court intended to revoke his bond, he came to the courthouse crying and in a very highly disturbed state. The defendant then represented himself at a hearing, and his bond was reinstated. The trial court appointed new counsel for the defendant.

[¶ 3] The Texas Commission for Lawyer Discipline initiated disciplinary proceedings against Hawkins, and the District Court of Midland County found Hawkins violated Texas Rules of Professional Conduct 1.01(b)(1) and 1.15(c),(d). The court suspended Hawkins from law practice for four years: one year of active suspension, from September 1997 to September 1998, followed by a three-year probated suspension.[2] Hawkins appealed, and the Court of

---

1. Hawkins was referring to the court procedure in Midland County whereby the court delegates to the Midland County Bar Association the duty of appointing counsel. Hawkins alleged this Association demanded attorneys pay a $200 assessment to avoid being designated as appointed counsel to represent criminal defendants.

2. There is an apparent calculation error by the District Court of Midland County in its Judgment of Suspension and Order of Probation. The court suspended Hawkins for 48 months, commencing September 1, 1997. The active part of the suspension was 12 months, effective September 1, 1997 and ending August 31, 1998. However, the court indicated the subsequent 36 months of probation began September 1, 1998 and ended Au-

Appeals for the Eighth District of Texas affirmed, with one minor modification of the judgment. Subsequently, the Supreme Court of Texas denied Hawkins' petition for review, concluding no error of law required correction or reversal of the judgment of the Texas Court of Appeals.

[¶ 4] The matter was then presented to the North Dakota Disciplinary Board, upon Petition for Reciprocal Discipline, which recommended identical discipline to that imposed by Texas to be served concurrently with the Texas suspension. The hearing panel recommended not assessing costs against Hawkins for the proceeding. On appeal to this Court, both Hawkins and the assistant disciplinary counsel filed objections to the hearing panel's report.

## II

■■■ [¶ 5] Hawkins argues we lack jurisdiction and authority to discipline him because he is not licensed to practice law in North Dakota and the actions for which he was disciplined in Texas were unrelated to North Dakota. Hawkins is mistaken.

[¶ 6] Under the North Dakota Rules of Lawyer Discipline, this Court has power to prescribe appropriate standards of professional conduct and to establish procedures for lawyer discipline. N.D.R. Lawyer Discipl. 1.1A. Any attorney admitted to practice law in North Dakota is subject to this Court's disciplinary jurisdiction under these rules. N.D.R. Lawyer Discipl. 1.1C.

[¶ 7] Thus, regardless of whether Hawkins is currently licensed to practice law in North Dakota, he is subject to our disciplinary jurisdiction because he was admitted to practice law in North Dakota. *See, e.g., In re Disciplinary Action Against Robb*, 2000 ND 146, ¶¶ 5, 18, 615 N.W.2d 125 (disciplining an attorney who was not currently licensed to practice law in North Dakota, but was admitted to practice in North Dakota, by commencing his license suspension if and when the disciplined attorney reapplied for a license).

[¶ 8] Furthermore, N.D.R. Lawyer Discipl. 4.4 provides clear instructions governing this Court's duty concerning reciprocal discipline when a lawyer, who is admitted to practice in North Dakota, has been disciplined in another jurisdiction:

A. Discipline Elsewhere. Upon being disciplined in another jurisdiction, a lawyer admitted to practice in North Dakota shall promptly inform counsel of such action. Upon notification that a lawyer within the jurisdiction of the court has been disciplined in other jurisdiction, counsel shall obtain a certified copy of the disciplinary order and file it with the board.

. . . .

D. Discipline. Upon the expiration of 30 days . . ., and upon recommendation of the board, the court shall impose the identical discipline unless the lawyer demonstrates and the court finds that upon the fact of the record from which the discipline is predicated, it clearly appears that:

(1) The procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the court could not, consistent with its duty, accept as final the conclusion on that subject; or

(3) The imposition of the same discipline by the court would result in grave injustice; or

(4) The misconduct established warrants substantially different discipline in this state.

If the court determines that any of those elements exists, the court shall enter such other order as it deems appropriate. In all other aspects, a final determination in another jurisdiction that a

gust 31, 2000, which only amounts to 24

months of probation.

lawyer has been guilty of misconduct establishes conclusively the misconduct for purposes of a disciplinary proceeding in this state.

[¶ 9] We review disciplinary proceedings against attorneys de novo on the record under a clear and convincing standard of proof. *In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 15, 580 N.W.2d 586. The burden of demonstrating that identical reciprocal discipline should not be imposed is on the lawyer who has been disciplined in another jurisdiction. *Id.* at ¶ 6.

### A

[¶ 10] Hawkins claims the Texas disciplinary proceedings were so lacking in adequate notice and a fair opportunity to be heard that he was deprived of his due process rights.

### 1

[¶ 11] Hawkins argues he had no notice of allegations because new allegations were added at every stage of the proceedings in Texas. Hawkins contends new allegations were made in the District Court of Midland County, then again in the Texas Court of Appeals, and after he testified. Hawkins does not explicitly indicate the substance of these new allegations, except that he claims no violation of Texas Rule of Professional Conduct 6.01 was alleged in the Texas proceedings, yet the North Dakota hearing panel recommends imposing reciprocal discipline based on such violation.

[¶ 12] The Texas District Court found Hawkins violated Texas Rules of Professional Conduct 1.01(b)(1) and 1.15(c),(d). The pertinent provisions of these rules are as follows:

Rule 1.01(b)

In representing a client, a lawyer shall not:

(1) neglect a legal matter entrusted to the lawyer . . . .

Rule 1.15(c)

When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

Rule 1.15(d)

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has [sic] not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law only if such retention will not prejudice the client in the subject matter of the representation.

[¶ 13] The North Dakota hearing panel erroneously indicated the Texas courts had based their decisions on a violation of Rule 6.01, which reads as follows:

Rule 6.01

A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:

(a) representing the client is likely to result in violation of law or rules of professional conduct.

However, the Texas Court of Appeals addressed Hawkins' due process arguments regarding Rule 6.01, namely, that he was incompetent to accept the court appointment, which he alleged was good cause to avoid the appointment. The Texas Court of Appeals concluded that attorneys may not simply decide they are incompetent to handle appointments and refuse the representation without the court's permission. Rather, the Court of Appeals found that once the district judge ordered Hawkins to continue representing his appointed client, after an evidentiary hearing determining Hawkins was competent, then Rule 1.15(c) comes into play and mandates that an attorney continue representation "notwithstanding good cause for terminating the representation." The Court of Appeals

further found the fact that the Texas Disciplinary Commission did not plead that Hawkins violated Rule 6.01 was harmless, because the Texas District Court judgment did not mention a violation of Rule 6.01.

[¶ 14] The hearing panel's error in stating the Texas courts had based their decisions on a violation of Rule 6.01 is harmless, as the Court of Appeals concluded Rule 6.01 no longer applied once the court determined Hawkins' competency and ordered him to continue his appointment under Rule 1.15(c). Thus, Hawkins' arguments fail, based on his alleged just cause to decline appointed representation under Rule 6.01, and Hawkins had notice of the allegations when he was served the Second Amended Disciplinary Petition alleging a violation of Rule 1.15(c). Therefore, we hold that Hawkins had adequate notice of the charges and was not denied due process in the Texas proceedings.

### 2

■ [¶ 15] Hawkins argues he had no notice his actions would violate the Texas Disciplinary Rules of Professional Conduct since the rules are unconstitutionally vague as written and applied. However, Hawkins' argument does not persuade us to reconsider the thorough analysis and interpretation of Texas rules by the Texas Court of Appeals. *See In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 21, 580 N.W.2d 586 (refusing to retry a disciplinary proceeding from another jurisdiction which comes before this Court on a petition for reciprocal discipline). The Texas Court of Appeals found the rules provided fair and adequate notice of the conduct expected of Hawkins because an ordinary attorney exercising ordinary common sense could sufficiently understand and comply with the rules which clearly distinguished between actions necessary to decline or withdraw from voluntary employment versus court-appointed representations. We hold Hawkins had fair warning of professional conduct required by Texas disciplinary rules and was not denied due process in the Texas proceedings.

### 3

■ [¶ 16] Hawkins argues he was deprived of due process because the Texas disciplinary proceeding was not conducted with quasi-criminal due process, but rather was "purely civil." Hawkins cites *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), for the proposition that quasi-criminal due process is constitutionally required for disciplinary proceedings, which are punitive in nature. Hawkins contends reciprocal discipline may not be imposed if quasi-criminal due process was denied.

[¶ 17] The North Dakota hearing panel concluded Hawkins mistakenly relied on *Ruffalo* to support his contention that a disciplinary process which is not quasi-criminal is unconstitutional. We agree. In *Ruffalo*, the United States Supreme Court held that in disciplinary proceedings against an attorney who testified to defend himself, the charges may not be amended based on the attorney's testimony. 390 U.S. at 546, 551, 88 S.Ct. 1222. Rather, the charge must be known before the proceedings begin, or they become a trap from which the attorney has "no opportunity to expunge the earlier statements and start afresh." *Id.* at 551, 88 S.Ct. 1222. The absence of fair notice as to the precise nature of the charges deprived the attorney of due process. *Id.* Thus, *Ruffalo* requires notice of the disciplinary charges, but does not constitutionally mandate the disciplinary proceeding be of a quasi-criminal nature. Hawkins misconstrues *Ruffalo*, which merely stated, "These are adversary proceedings of a quasi-criminal nature," not that the proceedings must be of a quasi-criminal nature in order to pass constitutional muster. *Id.* Furthermore, we have previously held, in a reciprocal disciplinary proceeding, that we will not find a denial of due process in the other state merely by showing the other state's disciplinary process differs from our process. *In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 19, 580 N.W.2d

586 (holding one state's clearly erroneous standard of review for disciplinary proceedings, rather than our de novo standard, does not amount to a denial of due process rights). We conclude Hawkins has failed to demonstrate he was denied due process from the nature of the Texas disciplinary proceedings.

4

[¶ 18] Hawkins argues he was deprived of an opportunity to be heard because he was precluded from presenting testimony and argument critical to his defense and because he was denied a trial by jury on the alleged violation of Rule 6.01. However, as the North Dakota hearing panel concluded, Hawkins vigorously defended against his initial court appointment in an evidentiary hearing, in a subsequent disciplinary action in the district court, and then an appeal of the judgment all the way to the Texas Supreme Court. Furthermore, Hawkins waived his right to a jury trial, and the Texas Court of Appeals found once Hawkins was determined competent to represent the appointed defendant, then Rule 6.01 no longer applied. We conclude Hawkins was not deprived of his due process right to be heard in the Texas proceedings.

B

[¶ 19] Hawkins claims there was such infirmity of proof in the Texas proceedings establishing the misconduct as to give rise to the clear conviction that we cannot accept as final the decision of the Texas courts. Hawkins asserts: "The Texas case was a political show in which the facts, law, and rules were used as props. There was no evidence of violation of the rules on which the judgment was based." In support of his contention, Hawkins presents his perspective on the facts and his interpretation of the Texas Rules of Professional Conduct.

[¶ 20] Although we review disciplinary proceedings de novo on the record, under a clear and convincing standard of proof, we will not retry the case. *In re*

*Disciplinary Action Against Dvorak*, 1998 ND 134, ¶¶ 15, 21, 580 N.W.2d 586. To prevail in a reciprocal disciplinary proceeding, Hawkins must convince us there was an infirmity of factual support for the disciplinary authority's findings on the face of the record. *See id.* at ¶ 21. However, Hawkins is essentially attempting to retry the Texas disciplinary proceedings by reciting his version of the facts leading to his suspension and by interpreting the Texas rules. As we stated above, the Texas Court of Appeals painstakingly construed the applicable rules, and we are loath to second-guess Texas courts' interpretation of Texas rules. The Court of Appeals also comprehensively analyzed the legal and factual sufficiency of the evidence. Based on the record, there is evidence from which the Texas courts could conclude Hawkins failed to represent a client when Hawkins was determined competent after an evidentiary hearing and was court-ordered to continue representing his appointed client. We hold there is no infirmity of factual support for the Texas disciplinary proceedings, as set forth in the Midland County District Court's Judgment of Suspension and Order of Probation or in the 31–page opinion of the Texas Court of Appeals.

C

[¶ 21] Hawkins contends imposing identical discipline by this Court would result in grave injustice because his refusal to represent his appointed client allegedly was mandated by the North Dakota Rules of Professional Conduct. Hawkins insists he "did nothing that would have been sanctioned by North Dakota in the first instance." Hawkins' argument is misguided.

[¶ 22] Hawkins' burden of proving identical discipline would result in grave injustice is not met simply by alleging lack of misconduct. *See, e.g., In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶¶ 22, 24, 580 N.W.2d 586 (rejecting attorney's claims of grave injustice

caused by reciprocal discipline based on different standards of review in both jurisdictions, a ten-year delay between alleged conduct and reciprocal disciplinary proceedings, and multiple allegations of misconduct in the state initiating the disciplinary proceeding). Furthermore, under N.D.R. Lawyer Discipl. 4.4(A), reciprocal discipline is imposed on attorneys admitted to practice in North Dakota who are disciplined under the rules of professional conduct of *another* jurisdiction, not for violations of the North Dakota Rules of Professional Conduct. Specifically, "a final determination in another jurisdiction that a lawyer has been guilty of misconduct establishes conclusively the misconduct for purposes of a disciplinary proceeding in this state." N.D.R. Lawyer Discipl. 4.4(D). We agree with the hearing panel which determined identical discipline will not result in a grave injustice when Hawkins currently is not licensed in North Dakota and when he testified he does not intend to apply for re-licensure in North Dakota. We hold that Hawkins has failed to carry his burden of demonstrating identical discipline would result in grave injustice.

D

[13] [¶ 23] Hawkins asserts the misconduct established in the Texas proceedings warrants substantially different discipline in this state. Hawkins argues under North Dakota standards, his actions would not warrant suspension, but only admonition. He further urges that "even admonition is a greater sanction than the facts justify."

■ [¶ 24] We attempt to impose similar disciplinary measures for similar violations under similar circumstances, but each disciplinary case must be decided on its own particular facts. *In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 26, 580 N.W.2d 586. Under N.D. Stds. Imposing Lawyer Sanctions 6.22, "Suspension is generally appropriate when a lawyer knows that he or she is violating a

court order [or] rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding." The Texas District Court found Hawkins violated Texas Rules of Professional Conduct 1.01(b) ("In representing a client, a lawyer shall not: (1) neglect a legal matter entrusted to the lawyer...."); Rule 1.15(c) ("When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation."); and Rule 1.15(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests...."). The record indicates Hawkins knowingly disobeyed a court order to continue representing his client, and this misconduct injured the client by causing him to fail to appear at trial, resulting in initiation of a bond forfeiture proceeding and issuance of an arrest warrant. We hold suspension is appropriate for Hawkins' rules violations, and his misconduct does not warrant substantially different discipline in this state.

III

■ [¶ 25] Assistant disciplinary counsel argues the hearing panel's recommendation of identical discipline, covering the same dates as the discipline imposed in Texas, results in credit to Hawkins for "time served" in Texas and is essentially retroactive discipline. Counsel claims this Court has never imposed retroactive discipline and has indicated it would not do so. Counsel asserts that giving Hawkins credit for suspension already served in Texas makes North Dakota's discipline "no more than empty noise" and rewards Hawkins for not notifying North Dakota of his discipline in Texas. Counsel urges us to impose a one-year suspension followed by a three-year probation effective either at the date of this Court's order or beginning on the date Hawkins reactivates his license to practice law in North Dakota.

[¶ 26] We have recognized lengthy suspensions from the practice of law are grave punishment for attorneys, yet this Court's disciplinary orders are not "empty noise" but are intended to protect the public. *In re Disciplinary Action Against Dvorak*, 2000 ND 98, ¶ 21, 611 N.W.2d 147. In an effort to put teeth into our disciplinary orders when an attorney has been disciplined several times previously, we have commenced a suspension on the date an attorney reactivates his license to practice law in North Dakota. *See In re Disciplinary Action Against Robb*, 2000 ND 146, ¶ 18, 615 N.W.2d 125 ("Since Robb is not currently licensed to practice law in North Dakota, his suspension will commence if and when he reapplies for a license.")

[¶ 27] We are also mindful of our reluctance to give credit for suspension time. *In re Disciplinary Action Against Dosch*, 527 N.W.2d 270, 274 (N.D.1995). In *Dosch*, credit was requested for time spent under temporary suspension toward the five-year suspension period Dosch was required to wait before applying for reinstatement to practice. *Id.* The hearing panel had concluded this was not an appropriate case to grant such a time credit, and we declined Dosch's request. *Id.* We reasoned Dosch had taken full advantage of the procedural protections offered by the disciplinary proceedings resulting in his disbarment, but he cannot properly demand credit for the time it took his case to wind its way through the disciplinary process. *Id.* We noted Dosch's misconduct involved recurrent dishonest activities, extending over a considerable time and involving many complexities, which added to the length of time required for the formal proceedings. *Id.*

[¶ 28] The hearing panel rejected assistant disciplinary counsel's contention that identical discipline of one year's suspension and three years' probation should be imposed starting at the time we decide this case. The panel reasoned no evidence was presented which warranted substantially

different discipline in North Dakota from that imposed in Texas. The panel noted the uniqueness of this case in that the discipline imposed by the Texas court would fully expire on August 31, 2000. However, the panel did not detect the apparent error of the Texas District Court in imposing 36 months of probation but then giving an expiration date of August 31, 2000, which adds up to only 24 months of probation.

[¶ 29] The benchmark for reciprocal discipline is that the discipline shall be identical, unless the proceedings in the jurisdiction which initiated the discipline lack due process or proof of misconduct, or unless identical punishment would result in grave injustice or the misconduct warrants substantially different discipline. N.D.R. Lawyer Discipl. 4.4(D). Identical discipline shall ordinarily be the same type of discipline and for the same duration although the date of imposition of the discipline may be delayed where circumstances warrant. *In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 24, 580 N.W.2d 586. Under the circumstances of this case, it was not inappropriate for the hearing panel to recommend identical concurrent discipline. Therefore, we impose identical discipline as that imposed in Texas, identical both in nature and in time period covered. The hearing panel may request a clarification from the Texas District Court of the obvious contradiction between the probated suspension imposed and the expiration date provided.

## IV

[¶ 30] Assistant disciplinary counsel argues costs should be assessed against Hawkins for the disciplinary proceedings, including the costs of review by this Court. Counsel contends the hearing panel erred by recommending no costs be assessed to Hawkins without further comment. We agree.

[¶ 31] Misconduct is grounds for assessing costs and expenses of disciplinary proceedings against the lawyer being disci-

plined. N.D.R. Lawyer Discipl. 1.3(A)(9). We have assessed costs and expenses for reciprocal discipline proceedings resulting in suspensions for only 30 days. *In re Disciplinary Action Against Dvorak*, 1998 ND 134, ¶ 29, 580 N.W.2d 586.

[¶ 32] On Petition for Reciprocal Discipline, Hawkins vigorously has opposed the imposition of discipline and has cost the disciplinary system the defense of its action under the guidelines of N.D.R. Lawyer Discipl. 4.4. Therefore, we direct Hawkins to pay the costs of his disciplinary proceedings, including review by this Court, in an amount to be determined by the Disciplinary Board.

[¶ 33] CAROL RONNING KAPSNER, DALE V. SANDSTROM, WILLIAM A. NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 34] I agree with the majority that we should impose reciprocal discipline on Hawkins. Hawkins' actions, as described in ¶ 2 of the majority opinion, were to abandon the criminal defendant because of Hawkins' dispute with the bar association and the court over how representation for indigent defendants was to be provided. His statement that the "[Judge] has decided that you are not entitled to a lawyer" was at best an unwarranted characterization of the Judge's order obviously meant to use the defendant, Hawkins' client, in Hawkins' dispute with the court and the bar association. Hawkins plainly violated Rule 1.15 of the Texas Rules of Professional Conduct.

[¶ 35] I disagree with part III of the majority's opinion. For the first time of which I am aware, the majority holds that "identical" as used in N.D.R. Lawyer Discipl. 4.4(D) means identical not only in substance but in time. *See, e.g., In re Disciplinary Action Against Roybal*, 2000 ND 125, ¶ 6, 612 N.W.2d 277 (imposing reciprocal discipline order "effective immediately"); *In re Disciplinary Action*

*Against Stevenson*, 2000 ND 126, ¶ 4, 612 N.W.2d 278 (imposing reciprocal suspension upon application for reinstatement); *Disciplinary Action Against Dvorak*, 1998 ND 134, ¶¶ 1, 29, 580 N.W.2d 586 (imposing "identical" discipline effective August 8, 1998; Minnesota discipline imposed effective October 31, 1996, *In re Disciplinary Action Against Dvorak*, 554 N.W.2d 399, 405 (Minn.1996)).

[¶ 36] Despite the recognition at ¶ 26 of the majority opinion that disciplinary orders are not "empty noise" the effect of this holding is to make them exactly that in reciprocal discipline cases unless the lawyer promptly informs disciplinary counsel of the fact the lawyer was disciplined in another jurisdiction as required by N.D.R. Lawyer Discipl. 4.4(A). I cannot determine from the record whether or not Hawkins complied with this rule. In the future it would be helpful if the hearing panel made a finding as to whether or not the lawyer complied with the requirement in Rule 4.4(A).

[¶ 37] If the lawyer does promptly notify disciplinary counsel and the delay in imposing reciprocal discipline is the result of action or inaction by the North Dakota disciplinary system, I would, unless other factors are present, agree that the beginning and ending line of the reciprocal discipline should be the same as that set by the other jurisdiction. Here, however, there is no indication the delay was due to this State's disciplinary system. Rather, it appears Hawkins persisted through every avenue available in Texas and, having lost at every turn, continued his denial that his actions contravened disciplinary rules in Texas by filing a document entitled "Discipline by the Supreme Court of North Dakota is unwarranted" on January 24, 2000. Hawkins' objection to reciprocal discipline in North Dakota seeks to have us review decisions of the District Court of Midland County, Texas, the Court of Appeals of the Eighth District of Texas as well as the Texas Supreme Court.

[¶ 38] Hawkins clearly violated the duty owed a client and used that client to attempt to prove his dissatisfaction with assignment of counsel for indigent defendants in Midland County, Texas. Hawkins, having lost in the Texas courts, persists in the same attack in this State. Under these circumstances I believe his objections are frivolous and I would not accept the recommendation of the Hearing Panel. Although the Panel stated no evidence was presented which warranted substantially different discipline in North Dakota from that imposed by Texas, the findings of the Panel itself, as I indicated above, lack certain information on Hawkins' compliance with our rules concerning notification of the Texas discipline.

[¶ 39] I understand it is probable Hawkins will never seek to practice law in North Dakota in the future. However, I am gravely concerned by the precedent established through the recommendation of the Panel and now approved by the majority that "identical" discipline means the same timing as well as the same substantive discipline. The logistics of time required for notices, hearings, etc., will, as it does here and in most instances other than disbarment, mean the imposition of discipline after the time of the discipline has already expired in the other jurisdiction. That is not only "empty noise," the effect of the majority opinion may well be to encourage delay by the lawyer in notification to disciplinary counsel in order to achieve such a result.

[¶ 40] I would order the discipline be imposed on Hawkins should he ever apply for a license to practice law in North Dakota.

[¶ 41] MARY MUEHLEN MARING, J., concurs.